JEFFERSON COUNTY—HON. MILTON H. MERWIN, SURROGATE—April, 1862.

## WHITE *v.* LOWE.

### In the Matter of the Administration of the Estate of JACOB LOWE, deceased.

The nullity of a marriage, voidable merely, must first be pronounced by a court of competent jurisdiction, before the fact of its invalidity can be taken advantage of in any proceeding. If not declared void, it remains good and legal for all purposes, and either party surviving the other has a prior right to letters of administration.

Where a woman, whose husband had been absent for more than five successive years, without being known to her to be living, and was reputed to be dead, cohabited with the intestate, and lived with him as his wife for twenty years, until his death; and the first husband, though living, had not obtained a decree annulling the second marriage;—*Held*, that the woman was the widow of the intestate, and was entitled to letters of administration on his estate, in preference to all others claiming them.

The fact that the abandonment was on the part of the wife, and not of the husband, can make no difference. The mere fact of *absence*,—where it

does not appear that it was created with a view of avoiding the statute,—is sufficient, without reference to the manner, or the reason, or occasion of it.

Under the Laws of 1830, ch. 320, § 28, a marriage, though not performed in accordance with the Revised Statutes, is not for that cause illegal.

This was an application for letters of administration upon the estate of Jacob Lowe, deceased. His sister, Margaret White, applied, and her claim was contested by Christina Lowe, claiming to be the widow of the deceased. The deceased left no descendants, parents, or brothers. The sister was, therefore, next entitled after the widow.

J. F. STARBUCK, *for Applicant.*

F. W. HUBBARD, *for Contestant.*

THE SURROGATE.—From the evidence given, I find the following facts:

That Christina, over forty years ago, was married to Lawrence Connolly, and lived with him as his wife. This was proved by the declarations and acts of Christina. (2 *Greenl. Ev.*, § 462; 1 *Cow. & H. Notes, note*, 469, 782; *Jackson v. Claw*, 18 *Johns.*, 346; 1 *Edw.*, 377, 378):

That Connolly is still alive, and Christina has never been divorced from him:

That about forty years ago, Christina and Connolly separated, and it is claimed by the applicant that she *abandoned* him. It appears that Connolly went to Canada temporarily, and with the intention of returning; and, soon after he went away, Christina left with Lowe, taking with her a son she had by Connolly. Soon afterwards Connolly returned, but afterwards removed to Canada to live. Christina swears that she and Connolly agreed to separate, and that each left the other in pursuance of the agreement. There is no evidence contradicting this, and perhaps the acts of the parties were not inconsistent. I think it sufficient for me now to find that they separated, and did not afterwards live together.

About twenty years ago, or, as Christina testifies, about July, 1840, she was married to Jacob Lowe, and from that

time lived with him as his wife, until his death, in 1856. She further testifies, that for some twenty years before she married Lowe, she had not heard from Connolly, and did not know that he was living, but had heard of his death some six years before. The applicant offers evidence to show that she did know of his being alive within five years before her marriage with Lowe. Evidence of her knowledge, after the marriage, I do not consider important; and the only evidence of her knowledge before that time and within five years, is in the testimony of Nathaniel Ingerson. He says that after the church trial, or about that time, he heard Christina say she had a husband in Canada, and that this was between 1835 and 1840. Christina, in speaking of the church trial, says she was married to Lowe before then, and she denies the conversation with Ingerson. The other declarations of Christina offered in evidence by applicant, as to her knowledge of Connolly's living, were all more than five years before her marriage with Lowe. She herself swears that she did not know he was living till some ten years after such marriage, when her son saw him in Canada. It also appears that some four or five years before the marriage, there was a pretty general rumor of Connolly's death. I think, upon the whole, the applicant has failed to prove that Christina knew of Connolly's living within five years before her marriage with Lowe, or overcome her positive oath denying such knowledge.

Upon these facts, the legal question arises, whether Christina is the widow of Lowe for the purpose of this application, —Connolly, her former husband, being still alive, and the relation of husband and wife still in law existing between them.

Section 5 of 3 Rev. Stat., 5 ed., 227, provides that if any person, whose husband or wife shall have absented himself or herself for the space of five successive years, without being known to such person to be living during that time, shall marry during the lifetime of such absent husband or wife, the marriage shall be void only from the time that its nullity shall be pronounced by a court of competent authority.

In other words, the marriage is voidable, not void. Now what are the rights of the parties under a voidable marriage? Dower attaches upon all marriages not absolutely void, and existing at the death of the husband. It belongs to a wife *de facto*, whose marriage is voidable by a decree, as well as to a wife *de jure*. (4 *Kent.*, 3 ed., 36; 1 *Greenl. Cruise*, 155.) Likewise, the husband will have curtesy. (*Id.*, 154, § 5.) When the contract of marriage is void absolutely, the husband is not entitled to administration upon the wife's estate; but when it is voidable, and sentence of nullity has not been declared, he is entitled. (1 *Will. Ex.*, 358.) By common law, a second marriage, while the first husband or wife was living undivorced, was void. (2 *Kent.*, 78, 80; *Williamson v. Parisien*, 1 *Johns. Ch.*, 389.) This was the rule in this State prior to the Revised Statutes, though the penal consequences did not follow where the second marriage took place after absence of five years. (1 *Johns. Ch.*, 389.) To prevent the marriage being absolutely void, the Revised Statutes changed this rule and made the marriage voidable only. (*Revisers' Notes*, 3 *Rev. Stat.*, 2 ed., 660.) It is to be assumed that the Legislature, in changing the law, meant to place such marriages on the same footing as all other voidable marriages. That is the inference from the act.

Applying these principles to the case before us, we have a legal marriage, that so continued to the death of the husband, and still so continues; and if legal, the widow must be entitled to all the rights that the law gives to widows, of which the right to administer upon her deceased husband's estate is one. In *Valleau* v. *Valleau* (6 *Paige*, 207), a bill was brought for a divorce on ground of adultery. The plaintiff had abandoned his wife, and she, not knowing him to be living within five years, married again. Plaintiff then returned, and defendant continued to live with the second husband. *Held*, not adultery; that the last marriage being voidable merely, but not void, the remedy of the first husband is by bill to annul the voidable marriage; and then, if his wife cohabits with the second husband, it is adultery, and that it

would be illegal to cohabit with the first husband or wife till the second marriage was declared void. This is the only adjudication I find upon the statute in question; and if the doctrine there laid down is correct, the nullity of any such marriage must first be pronounced before the fact of its invalidity can be taken advantage of in any proceeding. If not declared void, it remains good and legal for all purposes. The children of such marriage would be legitimate, because born in lawful wedlock (1 *Blackst. Com.*, 445); and for like reason, they would succeed as heirs to the property of their father or mother (2 *Greenl. Cruise*, 138), unless, and until, the marriage was declared void. I think this the reasonable construction of the statute, and that, therefore, Christina is now the legal widow of the deceased, unless there is some other valid objection in the way.

But it is claimed that Christina is not entitled to the benefit of the provisions of the statute, for the reason that her first husband did not absent himself from her, but, on the contrary, that she absented herself from him and abandoned him, and is therefore not within the statute.

This provision is similar to that of the criminal law (3 *Rev. Stat.*, 5 ed., 967, § 9), which excepts from the operation of the statute in relation to bigamy, " any person, by reason of any former marriage, whose husband or wife by such marriage shall have been *absent* for five successive years, without being known to such person within that time to be living." This also followed the provision of the Revised Laws (1 *Rev. L.*, 113), which excepted any person " whose husband or wife shall have *absented* him or herself, the one from the other, by the space of five years together, the one of them not knowing the other to be living within that time." All these provisions are modelled from the statute of James I. (2 *Kent*, 79, 80, 3 ed.; *Bishop on Divorce*, 3 ed., § 203), in which the exception was, " those persons whose husband or wife *should have remained* seven years beyond sea, or the same period within his majesty's dominions, not known to the other to be living." So in the statute, 9 George IV. (cited in *Bishop on*

*Divorce*, § 203, *note* 1), repealing the statute of James, the phraseology is, "whose husband or wife shall have been *absent*," &c.

None of these provisions make any reference to the reason or occasion of the absence. Undoubtedly, they all mean to carry out the same idea. The criminal statute, as it now stands, uses the phrase, "shall have been absent," while the Revised Laws reads, "shall have absented himself." But, judging from the Revisers' Notes (3 *Rev. Stat.*, 2 ed., 825), the same idea was meant to be conveyed in both cases. Taking all the provisions cited together, the fair conclusion, it seems to me, is that the fact alone of absence, the one from the other, for the specified time, without knowledge of the other living, will bring the party within the statute.

Upon the facts of the case under consideration, it may be a question whether it be necessary to decide this point. Christina and Connolly lived at Denmark, Lewis county, some forty years ago. Christina left and went to reside in Brownville, Jefferson county. Connolly also afterwards left and went to Canada. He knew where Christina lived in Brownville, but he absented himself—in other words, voluntarily left, and remained absent for five years, and was reputed dead. His place of residence in Canada was unknown, and it does not appear that Christina had the means of finding it out. The reason why he left, or the position of the party remaining, the statute does not in terms regard. From these facts, it might be argued that Connolly had absented himself, inasmuch as he knew where Christina was, but she did not know where he was. However, I put the case upon the other ground, holding that the mere fact of absence is sufficient. If it should appear that the parties had created the absence with the view of avoiding the statute, the rule might be different.

The point raised by the counsel for the applicant, that the marriage of Christina with Lowe is not legal, because not performed in accordance with the Revised Statutes, is fully answered by the law of 1830, ch. 320, § 28, which provided

that the provisions of the marriage act should not be construed to require the parties to any marriage, or any minister or magistrate, to solemnize the same in the manner therein prescribed, but that all lawful marriages contracted in the manner theretofore in use in the State should be as valid as if the marriage act had not been passed.  (3 *Rev. Stat.*, 5 ed., 229, § 18.)

Having these views, I must hold that Christina Lowe is entitled to letters.