## SUPREME COURT.

### GRIFFIN and others agt. BANKS and others.

Where the *wife*, after her husband's absence for five successive years, and without her having known, during that time, that he was living, (*see* 3 *R. S.*, 227, *5th ed.*,) married a second husband,

*Held*, that the first marriage was only placed by the law in *abeyance*. It only temporarily suspended the rights of the first husband, unless, by his own neglect or acquiescence, he waived or abandoned them.

The first husband, in this case, having omitted or neglected to resort to the proper remedy, by filing a bill and proceeding in the manner prescribed by the statute,

to annul the voidable (second) marriage, the latter marriage continued in force after the death of the first husband, and had the same force and effect as if, when it was solemnized, the first husband *was not alive.*

A *deed of separation* between husband and wife, which is without consideration, and consequently void, does not affect the husband's rights in the property and business of the wife, or the debts contracted in her name; and such property passes to his assignee, in *an assignment for the benefit of creditors*

*New York General Term, October,* 1862.

INGRAHAM, BARNARD and CLEKE, *Justices.*

By the court, CLERKE, P. Justice.   I. The justice who tried this action at special term has found as a matter of fact, " that on the 22d day of July, 1842, Mary McCullom married Bruce McKinney, at the city of New York; that such marriage was contracted by her in good faith, believing McCullom (her first husband) to be dead, and after McCullom had absented himself for five successive years, and without her having known, during that time, that McCullom was living."

This finding we see no reason to disturb ; and we shall therefore assume its truth.

The statute (3 *R. S.,* 227, *5th ed.,*) provides that " if any person whose husband or wife shall have absented himself or herself for the space of five successive years, without being known to such person to be living during that time, shall marry during the lifetime of such absent husband or wife, the marriage shall be void only from the time that its nullity shall be pronounced by a court of competent authority."   The second marriage in this case was not declared void by any court.

Had it, therefore, the same efficacy in all respects, as if the first husband was not alive at the time of its solemnization ?

The language of the statute is very general and positive, without any reservation or exception, express or implied ; and yet it would apparently be at variance with the plainest principles of justice, that the first husband should be deprived of his marital rights—of his right to the enjoy-

ment of the society of his wife and of his interest in her property, merely by her mistake, arising from an absence which, under many circumstances, he could not avoid, and which, indeed, may have originated in an endeavor to promote the common benefit of both. If the second marriage is to be upheld, the first ceases to have any validity; both, certainly, cannot co-exist. Under our law, and under that of all christendom for many centuries, if not from the very origin of christianity, no man shall have more than one wife, and no woman more than one husband, at the same time. Does the law, then, provide no redress for the husband who has been thus injured by the act of his wife, committed under a mistake? I think it does. It places the first marriage only in abeyance. It only temporarily suspends the rights of the first husband, unless, by his own neglect or acquiescence, he should waive or abandon them.

The course pointed out by the chancellor, in *Valleau* agt. *Valleau*, (6 *Paige*, 207,) is open to every husband or wife in similar circumstances. He says: " The remedy of the former husband or wife, in such a case, is to file a bill, and proceed in the manner prescribed by the statute to annul the voidable marriage, and if the parties thereto continue to cohabit together, after a decree of nullity has been pronounced, the rightful husband or wife may then file a bill for a divorce on the ground of that adultery." This is the obvious and the only practicable course; and McCullom, the first husband in this case, having omitted or neglected to resort to it, the second marriage continued in force, and, after the death of McCullom, could not be disputed or invalidated by his representatives, or any other party.

I hold, therefore, that the marriage of Bruce McKinney and Mrs. McCullom has the same force and effect as if, when it was solemnized, McCullom was not alive.

Assuming, then, that this marriage was as legal in its origin and continuance as any other marriage, did the deed of separation, in 1844, or any other act of McKinney, divest

him of all right to the property which then or afterwards belonged to his wife?

On this point, I adopt the reasoning of the justice at special term, and agree with him that the deed of separation, being without consideration, was void; that the property and business remained the property and business of the husband; that the debts contracted in the business, although contracted in the name of Mary B. McKinney, were the debts of Bruce McKinney; that he, and not Langan, the trustee in the deed of separation, had the legal right and title in the property; that consequently he had the sole right to make an assignment for the benefit of the creditors, and that his assignees, and not the assignees of his wife, have a good title to the property in question and its proceeds.

The judgment of the special term should be affirmed, with costs.