[S. F. No. 3201.   Department Two.—September 18, 1903.]

In the Matter of the Estate of JOHN P. HARRINGTON, Deceased.   AMELIA HARRINGTON, Appellant, v. UNION TRUST COMPANY, Executor, etc., et al., Respondents.

HUSBAND AND WIFE—MISTAKEN BELIEF OF DEATH—SECOND MARRIAGE AFTER FIVE YEARS—VALIDITY—PROBATE HOMESTEAD.—Under the law of this state, a second marriage contracted in good faith by the wife of a former husband, who was absent and not known to her to be living, or was generally reputed and believed by her to be dead, for the space of five successive years immediately preceding such second marriage, is valid until its nullity is adjudged by a competent tribunal; and if not so annulled, the wife cannot claim a probate homestead in the estate of her former husband as his widow.

ID.—LAW OF ANOTHER STATE—ABSENCE OF PROOF—PRESUMPTION.— Where the second marriage took place in another state, under the law of which it is claimed to be absolutely void; if the law of such state is not proved as a fact, it must be presumed to be the same as the law of this state.

ID.—DUTY OF HUSBAND TO INFORM WIFE—WIFE NOT BOUND TO INQUIRE —RIGHTFUL BELIEF OF DEATH.—It was the duty of the former husband to keep his wife advised as to his whereabouts. The wife was not required to endeavor to ascertain his whereabouts; but she had the right to believe, from his silence for ten years prior to the second marriage, that he was dead.

APPEAL from an order of the Superior Court of the City and County of San Francisco denying an application to set aside a homestead.   James M. Troutt, Judge.

The facts are stated in the opinion of the court.

M. C. Hassett, and Samuel Shortridge, for Appellant.

The mere absence of the husband was not sufficient to raise the presumption of death. (*Garwood* v. *Hastings*, 38 Cal. 217; *Estate of Richards*, 133 Cal. 524; *Kenzie* v. *Kenzie*, 7 Daly, 460; *Bailey* v. *Bailey*, 36 Mich. 183; *Francis* v. *Francis*, 180 Pa. St. 647; *Tyler* v. *Tyler*, 30 N. Y. Supp. 330, 80 Hun, 406, 408; *Gall* v. *Gall*, 114 N. Y. 109; *Hancock* v. *Insurance Co.*, 62 Mo. 26; *Wentworth* v. *Wentworth*, 71 Me. 72.) Reasonable inquiry was necessary. (*Gall* v. *Gall*, 114 N. Y. 109.) The second marriage was void, the first marriage never having been avoided or dissolved by death or divorce. (*In re Eichhoff*, 101 Cal. 605; *Estate of Richards*, 133 Cal. 524; *Harris* v. *Harris*, 136 Cal. 379; *Martin* v. *Martin*, 22 Ala. 86, 101; *Drummond* v. *Irish*, 52 Iowa, 41; *Blossom* v. *Barrett*, 37 N. Y. 434;[1] *Greve's Estate*, 165 Pa. St. 126; *Paine* v. *Paine*, 37 Mo. App. 110; *Smith* v. *Smith*, 5 Ohio St. 32; *Reeves* v. *Reeves*, 54 Ill. 332; *Palmer* v. *Palmer*, 162 N. Y. 100; *In re Clark Estate*, 173 Pa. St. 451; *Shaffer* v. *Richardson*, 27 Ind. 122; *Randlett* v. *Rice*, 141 Mass. 385; *Vincent* v. *Vincent*, 16 Daly, 534; *Wheeler* v. *Wheeler*, 76 Wis. 631; *Glass* v. *Glass*, 114 Mass. 563; Schouler on Domestic Relations, 3d ed., sec. 21. See, also, numerous other cases to the same effect cited in 14 Am. & Eng. Ency. of Law, pp. 499, 500.) The validity of a marriage is determined by the law where celebrated, and if void where celebrated, it is void everywhere, and may be so declared by the court of another state. (*Barry* v. *Cuness*, 68 Vt. 51; *Webster* v. *Webster*, 38 N. H. 3.) The domicile of the deceased was in law the domicile of the wife, he having deserted her, and her legal rights in the estate were not affected by his desertion. (*In re Shaffer* v. *Richardson*, 27 Ind. 12; *Estate of Richards*, 133 Cal. 524; *Terry's Appeals*, 55 Pa. St. 344.) The court having access to the published statutes of Michigan, should consult them as to the law of that state. (Code Civ. Proc., secs. 1875, 1963, subd. 35.)

Heller & Powers, Beverly L. Hodghead, Charles A. Mau, and Martin Stevens, for Respondents.

The court cannot take judicial notice of the law of a sister state. (*Estate of Richards*, 133 Cal. 524; *Marsters* v. *Lash*,

---

[1] 97 Am. Dec. 747.

61 Cal. 622; *Shumway* v. *Leaky,* 67 Cal. 460.)   Section 61 of
the Civil Code as it stood under the amendment of 1874 ap-
plies to this case.   The marriage with Carley never having
been annulled, appellant has no claim to a homestead or fam-
ily allowance from the estate of her former husband.   (*Jones*
v. *Zoller,* 32 Hun, 280; *White* v. *Lowe,* 1 Redf. 376; *Strode*
v. *Strode,* 3 Bush, 227;[1] *Garwood* v. *Hastings,* 38 Cal.
217; *Estate of Noah,* 73 Cal. 583;[2] *Kersey* v. *Bailey,* 52 Me.
195-201.)

LORIGAN, J.—This is an appeal from an order denying an
application to set aside a homestead.   The facts are brief, and
as found by the lower court are, that John P. Harrington, the
deceased, and appellant intermarried in Calumet, Michigan,
in 1874, where a week after the marriage the decedent left her
and came west, ultimately settling in the city of San Fran-
cisco.   After he left her, and between 1874 and 1876, he wrote
her four letters and sent her some sums of money.   Subse-
quent to the latter year she received no communication from
him, or information of his whereabouts, and it was generally
reputed in Calumet, where she continued to live, that he was
dead, and she so believed him to be.   In 1886 at Calumet she
remarried in good faith one James Carley.   After her mar-
riage to Carley, rumors having reached Calumet that Har-
rington was alive, she and Carley voluntarily separated, and
his present whereabouts are unknown.   No annulment, how-
ever, of the second marriage was had.

In 1900 Harrington died in San Francisco, leaving, in addi-
tion to other property, a lot in said city suitable for a dwell-
ing-place, which respondent, having come from Michigan to
California, petitioned the probate court to set apart to her as
a homestead, which was denied.

This case comes within a very narrow compass, the only
point involved being whether the respondent is the widow of
the deceased.   The lower court held that she was not, and we
think that determination was correct.   While it is contended
by appellant that by the law of Michigan the second marriage
to Carley was absolutely void, there was no proof of such law,
and it must be assumed that the law of Michigan is similar to

---

[1] 96 Am. Dec. 211.                    [2] 2 Am. St. Rep. 829.

that of this state (*Estate of Richards,* 133 Cal. 526), and that
the second marriage, instead of being void, was voidable
merely. Our Civil Code (sec. 61), as it stood in 1886, when
this marriage to Carley took place, provided that "a subse-
quent marriage contracted by any person during the lifetime
of a former husband or wife of such person . . . is illegal
and void from the beginning, unless . . . 2. Such former hus-
band or wife was absent, and not known to such person to
be living, for the space of five successive years immediately
preceding such subsequent marriage, or was generally reputed
and so believed by such person to be dead at the time such
subsequent marriage was contracted; in either of which cases
the subsequent marriage is valid until its nullity is adjudged
by a competent tribunal." It will be noticed, that by express
provision of this section, "the subsequent marriage is valid
until its nullity is adjudged by a competent tribunal." There
are some jurisdictions in which it has been held that after such
second marriage, when it was discovered that the former hus-
band or wife was alive, an annulment of the second marriage
could be created by the parties thereto themselves, through a
separation. This doctrine, however, does not obtain in this
state where, as above indicated, the annulment can only be had
by a judgment of the court. (*Jackson* v. *Jackson,* 94 Cal.
446.)

The general rule of law upon this subject is as stated in
Tiffany on Persons and Domestic Relations (p. 37): "Where
a marriage is merely voidable, and voidable by a decree of nul-
lity only, it is valid unless a decree is obtained, and the decree
must be made, if at all, during the lives of both parties. Until
it is made the marriage is valid for all purposes. The children
are legitimate; the parties are entitled respectively to curtesy
and dower; and all other incidents of a valid marriage attach."

In New York, which has a statutory provision similar to our
section 61 of the Civil Code, the court, in *Gall* v. *Gall,* says:
"The first marriage is suspended, as was held in *Griffin* v.
*Banks,* 24 How. Pr. 213. It is placed in abeyance, but it is
not reinstated by return of absentee, because the second mar-
riage becomes void only from the time when it is so declared
by a competent court. Otherwise, both marriages would be in
force at the same time, and, to this extent, polygamy would

be sanctioned by law. The first marriage ceases to be binding until one of the three parties to the marriage procures a decree pronouncing the second marriage void." (*Gall* v. *Gall*, 114 N. Y. 120; *Velleau* v. *Velleau*, 6 Paige, 209; *White* v. *Lowe*, 1 Redf. 379; *Griffin* v. *Banks*, 24 How. Pr. 213.) It would seem from the above cases, that not only is the second marriage valid until annulled, but that in the event of the death of Carley, appellant would have respectable authority upon which to make claim to the rights of a widow in his estate.

Be that as it may, however, her right to have the court set apart to her as a homestead, property of the estate of Harrington, can be based only on the fact that she is his widow. As we have seen, her marriage with Carley being valid and never annulled, she is still his wife. She cannot, then, at the same time and under these circumstances, be the wife of Carley and the widow of Harrington.

The cases cited by appellant (*In re Eichhoff*, 101 Cal. 600; *Estate of Newman*, 124 Cal. 688; *Estate of Richards*, 133 Cal. 524; and *Harris* v. *Harris*, 136 Cal. 379) did not involve the *status* of a party under a valid unannulled marriage, and hence are not in point. Nor do the other authorities cited apply under section 61 of the Civil Code.

Counsel for appellant attacks the sufficiency of the finding of the court, that appellant, in good faith, believing Harrington to be dead, contracted the second marriage with Carley, and contends that the evidence shows directly the contrary. If this claim of appellant were true, the marriage to Carley would be absolutely void, as not coming within the exception of section 61, and the making of this point is some suggestion that the utmost confidence is not placed by counsel upon the other point in the case. And if this claim were true, while it would entitle her to the homestead, it would remove the beneficent provision of section 61 from her daughter by Carley and stigmatize her as illegitimate. Her legitimacy is only protected on the theory that appellant's marriage with Carley was made in good faith. We do not, however, think that there is any merit in the assertion. The only testimony in the case was appellant's deposition; so there cannot be much room for dispute over what the evidence is, and on examination there is nothing in it militating against the finding of the court.

Counsel's principal claim in this respect is, that it does not appear from the evidence that appellant previous to her marriage with Carley made any endeavor to ascertain the whereabouts of Harrington. This she was not required to do. It was the duty of the latter to keep her advised of his whereabouts, and she had a right to believe, as she testified she did, from silence for ten years, that he was dead. (*Jones* v. *Zoller*, 39 N. Y. 285.) We are satisfied, under the principles of law above announced, that until the marriage of the appellant with Carley is annulled by a competent tribunal it must be deemed, under the provisions of section 61, to be a valid subsisting marriage, and as such appellant is the wife of Carley, and as a consequence the lower court was warranted in holding that she was not the widow of Harrington, and hence not entitled to a homestead.

The order of the lower court is affirmed.

McFarland, J., and Henshaw, J., concurred.

Hearing in Bank denied.

Beatty, C. J., dissented from the order denying a hearing in Bank, and filed an opinion, which is reported *post,* page 295, in connection with the opinion in *Estate of Harrington,* S. F. No. 3200, decided September 22, 1903.