[L. A. No. 3521. In Bank.—January 28, 1916.]

## THOMAS WILCOX, Respondent, v. CARRIE WILCOX, Appellant.

MARRIAGE—ANNULMENT—FALSE REPRESENTATIONS OF WOMAN AS TO PREVIOUS CHASTITY—POSTNUPTIAL CONVEYANCE.—False representations made by a woman prior to her marriage to the effect that she had always been of chaste and moral character do not authorize an annulment of the marriage or the setting aside of a postnuptial conveyance to her by her husband.

ID.—CONVEYANCE BY HUSBAND TO WIFE—PROMISE NOT TO ENCUMBER PROPERTY—USE AS HOME.—In this action by a husband to set aside a conveyance made to his wife, the evidence is held insufficient to show a promise by the wife that she would not encumber the property, or that, in so far as any act of hers is concerned, the property has not been kept for the purposes of a home for the parties.

ID.—UNDUE INFLUENCE OF WIFE—PRIMA FACIE EVIDENCE.—A finding that the conveyance in question was obtained by the undue influence of the wife is outside of the issues made by the pleadings, and must be disregarded. The mere relation of husband and wife does not constitute *prima facie* evidence of undue influence as against the wife.

ID.—ANNULMENT OF MARRIAGE—PREVIOUS HUSBAND LIVING—INSUFFICIENCY OF EVIDENCE.—A judgment annulling a marriage on the ground that the woman was the wife of another man is not sustained by evidence merely to the effect that the first husband was alive seventeen or eighteen years before, was then 33 or 35 years of age, and rugged and healthy.

ID.—BURDEN OF PROOF TO ESTABLISH THAT FORMER SPOUSE WAS LIV-
ING—PRESUMPTION OF LEGALITY OF SECOND MARRIAGE—PRESUMP-
TION AS TO CONTINUANCE OF LIFE.—The burden of proof is on the
party assailing a marriage on the ground that a former husband or
wife is still alive, to show not only the former marriage, but also
that it has not been dissolved by death or judicial decree, and the
*prima facie* presumption in favor of the validity of the marriage
assailed outweighs the presumption of the continuance of life of the
former husband or wife.

ID.—FINDING IN ACCORD WITH PRESUMPTION—EVIDENCE OF UNCHASTITY
OF WIFE.—If there is nothing to offset the effect of such presump-
tion, the court or jury must find in accord therewith. Mere evidence
that the woman was unchaste and was guilty of other wrongful acts
is insufficient to overcome the presumption of the legality of her
second marriage.

ID.—ABSENCE OF EVIDENCE THAT FORMER SPOUSE WAS ALIVE—GOOD
FAITH OR BELIEF OF PARTY WHOSE MARRIAGE IS ASSAILED.—In an
action for the annulment of the marriage on such ground, where
there is no evidence to show that the former husband was living at
the time of the subsequent marriage, the element of good faith or
belief of the defendant that her former husband was dead is not
involved.

APPEAL from a judgment of the Superior Court of Los
Angeles County, and from an order refusing a new trial.
Charles Monroe, Judge.

The facts are stated in the opinion of the court.

J. W. McKinley, Frank Karr, and Parker & Moote, for
Appellant.

Trask, Norton & Brown, for Respondent.

ANGELLOTTI, C. J.—This is an appeal by defendant
Carrie Wilcox from the judgment and from an order denying
her motion for a new trial. The judgment was one annulling
the marriage between the parties and canceling a certain con-
veyance of real property in Long Beach, Los Angeles County,
made by plaintiff to defendant.

The ground of annulment was that at the time of her mar-
riage to plaintiff, defendant was the wife of another man.
That she had falsely represented herself as being an unmar-
ried woman, when, in fact, there was a former husband living
from whom she had not been divorced, was the principal
ground upon which the conveyance, made by plaintiff after

the purported marriage and upon the belief that defendant was his wife, was set aside.  Other fraudulent representations were alleged and found to have been made, such as that she had always been of chaste and moral character, was a nurse, would be a kind, dutiful, and affectionate wife, etc.  As we understand the findings as to this, all such representations were made prior to the marriage, and really as an inducement thereto and to the conveyance of certain property in Pasadena, made before the marriage, and which the trial court refused to set aside, and the findings in this connection mean only that the plaintiff relied upon the same in making the subsequent Long Beach property conveyance.  Upon the authority of *Barnes* v. *Barnes,* 110 Cal. 418, [42 Pac. 904], it must be held that these findings must be discarded from any consideration which will give to them the effect of sustaining the judgment either as to the annulment of the marriage or the setting aside of the Long Beach property conveyance.  It was further alleged and found, it may be conceded, that this conveyance was made not only because of plaintiff's belief that defendant was his lawful wife, but that it was induced by a representation on defendant's part that the property would be kept as a home or support for them both, and that she would not convey it away or encumber it without his consent.  It was then encumbered by a mortgage for two thousand dollars, and subsequently defendant, without plaintiff's consent, increased the mortgage lien to three thousand dollars. There is absolutely no evidence to sustain a conclusion that defendant ever promised that she would not encumber the property, and there is nothing in the evidence to show that, in so far as any act of defendant is concerned, the property has not been kept for the purposes of a home for the parties. The mere additional encumbrance of one thousand dollars did not destroy its character as such, and there is nothing to indicate that it would have that effect.  If any finding of the court may reasonably be construed as showing undue influence on the part of defendant in obtaining this conveyance, it is entirely outside the issues made by the pleadings, the complaint containing no suggestion or intimation to that effect, and must be disregarded.  Nor can we find in the evidence any support for such a finding.  It appears to be settled that the mere relation of husband and wife does not constitute *prima facie* evidence of undue influence *as against the wife.  (Stiles*

v. *Cain,* 134 Cal. 170, [66 Pac. 231]; *McDougall* v. *McDougall,* 135 Cal. 316, [67 Pac. 778].)

We are satisfied that the judgment of the trial court can be sustained only on the theory that the evidence was sufficient to sustain its conclusion that the former husband was living at the time of defendant's marriage to plaintiff, and that if it was not sufficient for that purpose, the judgment must be reversed. The evidence as to this was substantially as follows: The marriage between plaintiff and defendant occurred on June 29, 1910. Some seventeen or eighteen years before that date defendant married a man named Albert Broberg, in St. Paul, Minnesota, and lived with him three days in Winnebago, a town near St. Paul. They then separated, he leaving her, she testified, and shortly thereafter she left the town and went to Philadelphia to her folks. She did not know where he went. She went by the name of Broberg for almost two years. She never obtained a divorce from Broberg nor he from her. In 1898 or 1899 she married a Dr. Lehman in New York. Before marrying the latter she tried to find out where Broberg was. She went to where "he used to live" near St. Paul, and could not find him. A deputy sheriff told her that he was dead. She testified positively that "he is dead," acknowledging, however, in answer to a later question, that her statement to that effect was based solely upon what the deputy sheriff told her. She never saw him after they separated. He was a healthy, rugged man, about 33 to 35 years of age. Dr. Lehman, who was over 70 years of age, and she lived together only about three years, and he died June 8, 1910, a few days before defendant's marriage to plaintiff.

It will be seen from the foregoing that there was no affirmative evidence from which it might lawfully be inferred that Broberg was alive on June 29, 1910, other than that to the effect that he was alive seventeen or eighteen years before, and was then 33 to 35 years of age, and rugged and healthy. The most that can be said as to this evidence, however, is that it might possibly be held sufficient to create the *prima facie* presumption that he was still alive, nothing to the contrary appearing. But, as was said in *Hunter* v. *Hunter,* 111 Cal. 261, 267, [52 Am. St. Rep. 180, 31 L. R. A. 411, 43 Pac. 756]: "The presumption of the continuation of life is, however, overcome by another. It is presumed that a person is innocent of crime or wrong. (Code Civ. Proc., sec. 1963.) There

is also a presumption, and a very strong one, in favor of the legality of a marriage regularly solemnized. Rather than hold a second marriage invalid and that the parties have committed a crime or been guilty of immorality, the courts have often indulged in the presumption of death in less than seven years, or, where the absent party was shown to be alive, have allowed a presumption that the absent party has procured a divorce. A more correct statement perhaps would be that the burden is cast upon the party asserting guilt or immorality to prove the negative—that the first marriage had not ended before the second marriage.'' This rule was held to apply in civil as well as in criminal cases, and *People* v. *Stokes*, 71 Cal. 263, [12 Pac. 71], claimed to establish a different rule; was disapproved. In *McKibbin* v. *McKibbin*, 139 Cal. 448, [73 Pac. 143], an action for divorce, it appeared from the plaintiff's testimony that prior to her marriage with the defendant she had been lawfully married to one Lake, who was still alive. It was claimed that plaintiff was bound to show a dissolution of that marriage to make out a *prima facie* case, but it was held substantially by the trial court that, as a divorce may have been granted or the marriage annulled, she was entitled to rely on the presumption of innocence of crime, the court saying: ''I am inclined to take the view that proof of solemnization, aided by the presumption that the solemnization was regular, would overcome the presumption of bigamy, that would result if she had two husbands.'' This court said it ''quite'' agreed, quoting from 1 Bishop on Marriage and Divorce, as follows: ''Every intendment of the law leans to matrimony. When a marriage has been shown in evidence, whether regular or irregular, and whatever the form of proof, the law raises a strong presumption of its legality—not only casting the burden of proof on the party objecting, but requiring him throughout, in every particular, to make plain, against the constant pressure of presumption, the truth of law and fact that it is illegal and void.'' These cases must be taken as establishing it to be the law in this state that the burden of proof is on the party assailing a marriage on the ground that a former husband or wife is still alive, to show not only the former marriage, but also that it has not been dissolved by death or judicial decree, and that the *prima facie* presumption in favor of the validity of the marriage assailed outweighs the presumption of the continuance of life of the

former husband or wife. There is nothing in any subsequent case to impair the effect of these decisions. It is true that in *Hunter* v. *Hunter*, 111 Cal. 261, [52 Am. St. Rep. 180, 31 L. R. A. 411, 43 Pac. 756], the trial court had found in accord with *the presumption*, in favor of the validity of the marriage, and that this court simply sustained a finding on the ground that it had sufficient support in the evidence. It is also true that in *McKibbin* v. *McKibbin*, 139 Cal. 448, [73 Pac. 143], the court did no more than to hold that such presumption was sufficient to make out a *prima facie* case. In neither case, therefore, was this court called upon to declare that the trial court must find in accord with *such presumption*. And, of course, whether it must do so or not depends upon the evidence in the particular case. If there is *nothing* to offset the effect of *such presumption*, the court or jury must find in accord therewith. It is expressly provided in section 1961 of the Code of Civil Procedure that a satisfactory or *prima facie* presumption may be controverted by other evidence, direct or indirect, "but unless so controverted the jury are bound to find according to the presumption." In the case at bar the last date on which the former husband was shown to be alive was some seventeen years before defendant's marriage to plaintiff. There was absolutely nothing to indicate that he was alive at any later date, except the presumption of continuance of life. To conclude that he was alive on June 29, 1910, involved the conclusion that the marriage to plaintiff was illegal and that defendant had twice committed the crime of bigamy, first in marrying Lehman and then in marrying plaintiff, with no evidence whatever upon which to found such a conclusion other than the presumption of continuance of life. That the evidence generally may have satisfied the trial court that defendant was an unchaste woman and was guilty of other wrongful acts could not authorize the court to disregard the presumption of her innocence of these crimes, and the presumption of the legality of her marriage to plaintiff. As well might it be contended that the effect of the presumption of innocence existing in favor of a defendant charged with a crime can be overcome by proof that he has been guilty of other distinct and different crimes, or is altogether a wicked and depraved individual. If there was any circumstance tending to show that Broberg was alive at the date of defendant's marriage to plaintiff, a case might fairly be held to have

been made upon which the court was authorized to find against
the presumption. But here we have nothing opposed to the
presumption other than the fact that he was alive at a remote
date, some seventeen years before. The case is one where the
presumption is not controverted by other evidence, direct or
indirect, and where, accordingly, the court is bound' to find
according to the presumption.

The learned district court of appeal in deciding this case
were of the opinion that the question of the good faith of the
party invoking such a presumption in a case of this character
was a material element to be considered, and finding in the
evidence no direct statement by her that she believed the state-
ment made to her that Broberg was dead, or any direct state-
ment that she had never heard from him, concluded that the
showing of good faith was not such as to require the trial
court to find in accord with the presumption. We are in-
clined to think that the analysis of defendant's evidence in
this regard was somewhat critical and technical, but assuming
it to be fairly warranted by the record, we are unable to see
that the element of good faith or belief of defendant is at all
involved in 'such a matter as the one before us. As is said
in the petition for a hearing in this court, "the belief of a
party in the death is material only, as appears from the cases
referred to by the court, when as a matter of fact the party
is alive." Under the provisions of subdivision 2 of section 61
of the Civil Code, a subsequent marriage contracted by a
person during the life of a former husband or wife of such
person is valid *until* its nullity is adjudged by a competent
tribunal, *if* the "former husband or wife is absent, and not
known to such person to be living for the space of five suc-
cessive years immediately preceding such subsequent marriage,
or is generally reputed or believed by such person to be dead
at the time such subsequent marriage was contracted." In
a case arising under this provision, a case involving the ques-
tion whether the second marriage is valid *notwithstanding the
former husband or wife is alive* and the former marriage has
not been dissolved or annulled, of course the element of good
faith and belief of the party that the former husband or wife
is dead is an essential element, for the statute expressly so
makes it. Such a case was *Estate of Richards*, 133 Cal. 524,
[65 Pac. 1034], relied on by respondent and cited by the
learned district court of appeal in support of its ruling that

good faith and honest belief are elements in the case at bar. There is not a word in the opinion in that case which is opposed to the views enunciated in *Hunter* v. *Hunter,* 111 Cal. 261, [52 Am. St. Rep. 180, 31 L. R. A. 411, 43 Pac. 756]. The same is true of *Estate of Harrington,* 140 Cal. 244, [98 Am. St. Rep. 51, 73 Pac. 1000], also cited by the district court of appeal. Section 61 of the Civil Code is not applicable here at all. Its provisions relate solely to a subsequent marriage "contracted by any person *during the life of a former husband or wife of such person,"* etc. If the former husband or wife is not shown to have been living at the time of the subsequent marriage, which is the case here, no situation is presented which the party is called upon to combat by a showing of honest belief that such former husband or wife was then deceased.

From what we have said it is apparent that the judgment of the trial court cannot be sustained.

The judgment and order denying a new trial are reversed.

Shaw, J., Sloss, J., Melvin, J., and Henshaw, J., concurred.