[Sac. No. 2495. In Bank.—October 11, 1916.]

In the Matter of the Estate of HIRAM HUGHSON, Deceased. JULIA J. BRIGHAM, Appellant, v. LUELLA R. HUGHSON, as Administratrix of the Estate of Hiram Hughson, Deceased, et al., Respondents.

MARRIAGE—PRESUMPTION OF LEGALITY—BURDEN OF PROOF.—It is the presumption in this state that a ceremonial marriage having been proven, it is to be treated as lawful until there is strong proof to the contrary, the burden of proof being upon the person asserting its invalidity.

ID.—PROCEEDING TO ESTABLISH HEIRSHIP—SUCCESSIVE MARRIAGES OF
DECEASED—CONFLICTING CLAIMS AS WIDOW—CONTINUANCE OF FIRST
MARRIAGE MUST BE SHOWN.—In a proceeding to establish heirship
to a deceased person, one claiming to be his widow by virtue of a
prior ceremonial marriage has the burden of proof, as against one
claiming to be his widow by a subsequent ceremonial marriage, to
show that at the very moment of the death of the deceased she
was his wife by virtue of a lawful and subsisting marriage. This
burden was not met by mere proof of the prior marriage. It was
necessary for her to further show that the second marriage was
void by proof of the fact that her own earlier marriage had not
been set aside by divorce or annulment. It was not incumbent
upon the claimant under the second marriage to show that the de-
ceased had been divorced prior to his second marriage.

APPEAL from a judgment of the Superior Court of Stanis-
laus County, and from an order refusing a new trial.  L. W.
Fulkerth, Judge.

The facts are stated in the opinion of the court.

Frank J. Gordon, Welles Whitmore, and James J. Van
Hovenberg, for Appellant.

Nutter & Orr, Griffin & Carlson, Hatton & Scott, J. W.
Hawkins, J. F. Lanagan, George F. McNoble, and Thomas,
Beedy & Lanagan, for Respondents.

MELVIN, J.—Julia J. Brigham instituted a proceeding
under section 1664 of the Code of Civil Procedure to deter-
mine heirship to Hiram Hughson, deceased, whose estate had
been for more than one year in process of administration.
After appropriate proceedings to bring in all interested per-
sons the said Julia J. Brigham became the plaintiff by filing
a pleading in which she asserted that she was the surviving
wife of Hiram Hughson, by virtue of a marriage by and be-
tween herself and said Hughson contracted in the state of
New York on the twenty-seventh day of October, 1860, and
continuing and subsisting until the death of said Hiram Hugh-
son, on January 15, 1911. This pleading was answered by
Luella R. Hughson, who asserted that she was the surviving
wife of Hiram Hughson, and by her ten children, who claimed
interest in the estate as legitimate heirs of the said Hiram
Hughson.

After trial judgment was given in favor of the defendants. From said judgment and from an order denying her motion for a new trial the plaintiff appeals.

The findings of the court disclose a very remarkable story. On the 27th of October, 1860, in the town of Norwich, county of Chenango, state of New York, Hiram Hughson and Julia J. Porter, this plaintiff, were lawfully joined in the bonds of matrimony by a ceremonial marriage duly performed. In February, 1861, Hiram Hughson left his wife, near Chenango Forks, in the state of New York, came by steamer to California, and never thereafter lived with her. During his lifetime she never heard from him directly or indirectly after his departure from Chenango Forks. About February 1, 1864, she left New York and went to Hongkong, China, where she was united to one Elias J. Manning by a ceremonial marriage duly solemnized according to law. Thereafter four children of this union were born. In 1866, the Mannings and their family left China and went to Chenango Forks, where they resided until a time shortly before Mr. Manning's death, which occurred in Delaware in 1872. Thereafter plaintiff continued to live near Chenango Forks until her marriage on February 16, 1875, to Frank Brigham at Greene, Chenango County, New York. This was a ceremonial marriage solemnized according to the laws of the state of New York. As a result of this union four children were born. Julia J. Brigham and Frank Brigham continued to live together as husband and wife and to hold themselves out to the world as such until a time following the first day of January, 1915. She never knew that Hiram Hughson had survived the voyage from New York and had reached and resided in California until early in the year 1914, when she learned of his death. The court also found that plaintiff entered into the marriage relations with Manning in Hongkong and with Brigham in New York in good faith; and that she had good and sufficient reasons to believe that Hiram Hughson was dead. There were specific findings that plaintiff before her marriage to Manning acted in the highest good faith both in law and in fact to ascertain whether her first husband was living or dead; and that "she, the said Julia J. Brigham, was before her marriage to the said Elias J. Manning and also before her marriage to the said Frank Brigham deceived as to the existence of her first husband, said Hiram Hughson, by a false report of his death,

which said report had been communicated to her by persons in whom she had confidence and upon whose statements she had a right in good faith to rely for truthful statements, which said statements she did rely upon to be true in all respects."

The court also found that Hiram Hughson and Luella R. Avery were lawfully and by due solemnization married at Stockton, California, November 21, 1864, and continued to be such husband and wife until his death in 1911. It was found that they lived before the world as married people, raised a large family, and worked together diligently and faithfully to accumulate the ample fortune which was theirs at the time of Mr. Hughson's death. There were further findings that at the time of the wedding of Hiram Hughson and Luella R. Avery there was no legal impediment to their contracting such marriage; that Julia J. Brigham was not the wife of Hiram Hughson at any time on or after November 21, 1864; and that she was the legal wife of Frank Brigham from the time of her marriage to him in 1875 to and until January 1, 1915, a time following the commencement of this proceeding to determine heirship. The court made elaborate findings upon many matters connected with the administration of the estate and with the interests of the widow, Luella R. Hughson, and her children, but it is not necessary to review them in the light of the conclusion which we have reached.

Respondent confidently depends upon the strength of the presumption which prevails in this state that a ceremonial marriage having been proven, it is to be treated as lawful until there is strong proof to the contrary, the burden of proof being upon the person asserting its invalidity. But appellant, while conceding that the authorities do seem to sustain the rule regarding the validity of marriage for which respondent contends, resists the application of the presumption to the facts of this case upon the ground that the question of a possible divorce of plaintiff from Hiram Hughson was not litigated. Appellant insists that the case was tried upon the theory by respondents that she and Hiram Hughson never had been married, and that the finding to the contrary is a complete overthrow of their position and is fatal to their case. She cites numerous authorities, among them *Brusie* v. *Gates,* 96 Cal. 265–268, [31 Pac. 111], to the effect that a litigant may not assume a position at variance with his pleadings. It is also argued that the denial by respondents that there ever

was a marriage between Hughson and Miss Porter amounts to a denial that there ever was or could have been a divorce. Appellant also asserts that as the record shows Hiram Hughson to have been the deserter and wrongdoer, no presumption of divorce may be invoked in his favor or in favor of anyone claiming through him.

But respondents, by relying upon the presumption that a marriage being proven, it stands as valid until proof of a prior unrevoked marriage, do not seek to change their pleading or position nor to substitute presumptions for proven facts. And the question whether Hughson was a wrongdoer or not in leaving and not returning to his bride in New York has no place in the discussion of this particular point. The sole question is this: Did plaintiff meet the burden of proof resting upon her under her pleading? She was seeking to establish her position as the widow of Hiram Hughson. To succeed it would have been necessary for her to show that at the very moment of the death of Hiram Hughson she was his wife by virtue of a lawful and subsisting marriage. (*Estate of Harrington*, 140 Cal. 244–246, [98 Am. St. Rep. 51, 73 Pac. 1000].) She had not only alleged the marriage but had pleaded the continuance of her status as the wife of Hiram Hughson to the moment of his death, and although respondents in their answers denied the marriage as pleaded, they also controverted the asserted position of plaintiff as Hughson's wife when he died, by averring that Luella R. Hughson was his wife at that time. The court found in their favor. It was not incumbent upon the respondents to show that Hiram Hughson had been divorced prior to his marriage to Luella. It was plaintiff's task to prove that the second marriage which she attacked was void—that her own earlier marriage to Hiram Hughson had not been set aside by divorce or annulment.

In many of the states of this Union the presumption in favor of the legality of a marriage is not overcome by mere proof of an earlier ceremony, but to show the illegality of the second marriage there must be proof of a continuance of the prior marital relation even when such proof involves the establishment of the negative proposition that there has been no divorce. In California the principle announced more than twenty years ago by this court in an opinion written by Mr. Justice Temple has been consistently followed ever since. In

that case the following language was used: "It is presumed that a person is innocent of crime or wrong. (Code Civ. Proc., sec. 1963.) There is also a presumption, and a very strong one, in favor of the legality of a marriage regularly solemnized. Rather than hold a second marriage invalid and that the parties have committed a crime or been guilty of immorality, the courts have often indulged in the presumption of death in less than seven years, or, where the absent party was shown to be alive, have allowed a presumption that the absent party has procured a divorce. A more correct statement perhaps would be that the burden is cast upon the party asserting guilt or immorality to prove the negative—that the first marriage had not ended before the second marriage." (*Hunter* v. *Hunter,* 111 Cal. 261–267, [52 Am. St. Rep. 180, 31 L. R. A. 411, 43 Pac. 756].)

In the very recent case, *In re Pusey's Estate, ante,* p. 141, [159 Pac. 433], where a person was seeking to show the invalidity of the marriage of petitioner to Gertrude Pusey, whose estate was involved, this court held that even if the person attacking the sufficiency of certain purported divorce proceedings could do so successfully, it would be necessary to show additionally that petitioner's undivorced wife was living when he married Gertrude Pusey; otherwise there could be no valid finding that he was not the latter's surviving husband. In *Wilcox* v. *Wilcox,* 171 Cal. 770, [155 Pac. 95], an action for annulment of marriage, it was held that proof of a marriage was not overcome by evidence of an earlier one without a showing of the continuance of the life of both husband and wife up to the moment of the second marriage. In *McKibbin* v. *McKibbin,* 139 Cal. 448, [73 Pac. 143], it was held that proof of a prior marriage and the continued life of both spouses was not sufficient to make a *prima facie* case as against a second ceremonial marriage; that there must be further showing that the first marriage had not been set aside by judicial decree. The books contain many similar decisions, but it is not necessary to go outside of California for authority. We will refer, however, to the frequently cited case of *Maier* v. *Brock,* 222 Mo. 74, [133 Am. St. Rep. 513, 17 Ann. Cas. 763, 120 S. W. 1167], which in its facts is very similar to the one at bar. It was a suit for assignment of dower. Plaintiff had married Maier in Germany in 1865. In 1866 he left her and came to America. In 1885 he visited Germany and she then

saw him for the last time. It was shown that in 1872 he married another woman and lived with her until her death. In 1885 he married Mary Baldruff and lived with her until she died. He then married another woman and was divorced from her. In 1902 he married Nora Carl and lived with her until his death in 1904. The finding of the court in favor of defendants was upheld. Many of the leading cases were there discussed, and upon the very presumption upon which respondent here depends the judgment was upheld.

We conclude that the court was justified in finding that the plaintiff was not Hughson's wife at the moment of his death. It therefore becomes immaterial whether or not the court erred in finding that under the laws of New York the marriage of plaintiff to Brigham was voidable merely and not void, and whether or not there was error in excluding proof that after the commencement of the action that marriage had been annulled by the judgment of another superior court of this state. Indeed, many interesting questions are eliminated from the discussion when this fundamental finding is upheld. Having no interest in the estate, appellant is not concerned with the manner of its distribution nor with other matters not related to her status. (*Estate of Walden,* 168 Cal. 759–761, [145 Pac. 100].)

The judgment and order are affirmed.

Shaw, J., Henshaw, J., and Angellotti, C. J., concurred.

Rehearing denied.