[Civ. No. 1704.   Fourth Appellate District.—April 12, 1935.]

MARTHA E. IMMEL, Appellant, v. DAISY M. DOWD, Respondent.

Durley & Downes and Edward C. Maxwell for Appellant.

Biby & Biby and Harry C. Biby for Respondent.

MARKS, J.—This action was brought by appellant seeking to recover title to a one-half interest in property in the city of Oxnard upon the ground that it was the community property of herself and Thomas J. Immel, she not having. joined in the deed made by Thomas Immel conveying it to respondent.

The facts as found by the trial court are not in dispute. Appellant and Thomas Immel were married on March 8, 1872. About the year 1881 Thomas deserted appellant and they did not live together after that date. On February 8, 1885, Thomas married Mary E. Jameson. This marriage was ceremonial. Respondent was their daughter. On September 19, 1886, appellant married Amos Duckett and lived with him as his wife until his death. Thomas Immel deserted his second wife in 1893 and moved to California. That marriage was dissolved by divorce in 1908. The property in controversy was acquired by Thomas Immel in 1905 and 1906. On November 28, 1908, he conveyed it to respondent by deed of gift, reserving a life estate in it to himself. He died on March 7, 1932.

The trial court found that the marriage between Thomas Immel and appellant had been dissolved by divorce at some time between the years 1881 and 1885. This finding is attacked as not being supported by the evidence.

The sole evidence in support of the questioned finding is disputable presumptions, set forth in section 1963 of the Code of Civil Procedure. It is not questioned that these presumptions are a form of evidence and if not overcome may be invoked to support the findings and judgment.

The evidence offered by appellant to rebut these presumptions may be summarized as follows: That Thomas Immel wrote her inclosing a copy of a decree of divorce from her which she thought had been rendered by a court sitting

in Ottawa, Kansas; that he had written and told appellant, and had told others, that he had not obtained a divorce from her; that she had never been served with any process in a divorce action brought by him; that she had not obtained a divorce from him; that after the death of Amos Duckett, a veteran, she had applied for a pension as his widow and that her application was disallowed because no evidence was found of a divorce from Thomas Immel; that the court records had been searched at Ottawa, Kansas, at Los Angeles and Ventura, California, and no record of her having been divorced by Thomas Immel was found.

In this connection it should be borne in mind that the trial court found that they had been divorced between the years 1881 and 1885. Thomas Immel did not come to California until 1893 and a search of the records of Los Angeles and Ventura Counties was useless as they could disclose nothing concerning a divorce supposedly granted before he came to this state. At the request of respondent an attorney wrote the county clerk at Ottawa, Kansas, asking if the "records of 50 years ago, more or less", disclosed that there had been a "divorce action between Thomas *E.* Immel and Martha E. Immel". To this inquiry the clerk replied, "No record of a divorce in the above named case in this County. Examined records to more than 50 years ago." There is no evidence indicating that Thomas Immel lived in Kansas between the years 1881 and 1885.

In the case of *Marsh* v. *Marsh,* 79 Cal. App. 560 [250 Pac. 411], a question similar to the one we are considering was before the court. It was there said: "It has been held time and again by the supreme court of this state that mere proof of a prior marriage and the continued life of both spouses is not sufficient to make a case against a second ceremonial marriage, that there must be a further showing that the first marriage has not been set aside by judicial decree. (*Estate of Hughson,* 173 Cal. 448 [160 Pac. 548]; *Estate of Harrington,* 140 Cal. 244 [73 Pac. 1000, 98 Am. St. Rep. 51]; *Maier* v. *Brock,* 222 Mo. 74 [133 Am. St. Rep. 513, 17 Ann. Cas. 763, 120 S. W. 1167]; *Hunter* v. *Hunter,* 111 Cal. 261 [52 Am. St. Rep. 180, 31 L. R. A. 411, 43 Pac. 756]; *Everett* v. *Standard Acc. Ins. Co.,* 45 Cal. App. 332 [187 Pac. 996].) . . .

"The testimony does show that Henry Marsh was in the state of California some little period of time before his marriage with respondent, yet the record is silent as to the county or counties in which he may have lived, and also the transcript is silent as to whether any search was made of the records in the counties where the deceased may have lived long enough to acquire a legal residence, to ascertain whether any divorce proceedings had been instituted by him. . . . The notes to this case (*Maier* v. *Brock, supra*) also point out what proof is necessary to overcome this presumption, to-wit: Proof of the first marriage, proof that the party attacking the validity of the second marriage had not obtained a divorce, and that the record of the courts of the different counties where the deceased may have resided and acquired a legal residence disclose that the deceased had not instituted and prosecuted to conclusion any such action. The burden of proof is clearly cast by the authorities upon the party attacking the second marriage, even though it involves the proving of a negative. . . . Other cases might be cited, but it is sufficient to say that the presumption is not overcome by testimony of one of the parties that such party has obtained no divorce and that no divorce papers, or summons, were ever served upon such party. It is further held that the burden of proving that a divorce has not been granted to either party of a former marriage is substantial and is not made by proof of facts from which mere inferences may be drawn."

*Estate of Hughson,* 173 Cal. 448 [160 Pac. 548], is factually similar to the case at bar. Julia J. Brigham asserted that she was the surviving widow of Hiram Hughson by virtue of her marriage with him in October, 1860. Luella R. Hughson asserted she was his widow by virtue of a ceremonial marriage at Stockton, California, in 1864. In 1861 Hughson left his first wife, Julia, and was never heard from or heard of by her until after his death in 1911. Julia married several times after 1861, each time in good faith believing her first husband was dead. Both Julia and Hiram had families by their subsequent spouses. In affirming the judgment of the trial court, holding that Julia J. Brigham was not the wife of Hiram Hughson at the time of his death, the Supreme Court said: "The sole question is this: Did plaintiff meet the burden of proof

resting upon her under the pleading? She was seeking to establish her position as the widow of Hiram Hughson. To succeed it would have been necessary for her to show that at the very moment of the death of Hiram Hughson she was his wife by virtue of a lawful subsisting marriage. (*Estate of Harrington*, 140 Cal. 244–246 [98 Am. St. Rep. 51, 73 Pac. 1000].) . . .

"In many of the states of this Union the presumption in favor of the legality of a marriage is not overcome by mere proof of an earlier ceremony, but to show the illegality of the second marriage there must be proof of a continuance of the prior marital relation even when such proof involves the establishment of the negative proposition that there has been no divorce. In California the principle announced more than twenty years ago by this court in an opinion written by Mr. Justice Temple has been consistently followed ever since. In that case the following language was used: 'It is presumed that a person is innocent of crime or wrong. (Code Civ. Proc., sec. 1963.) There is also a presumption, and a very strong one, in favor of the legality of a marriage regularly solemnized. Rather than hold a second marriage invalid and that the parties have committed a crime or been guilty of immorality, the courts have often indulged in the presumption of death in less than seven years, or, where the absent party was shown to be alive, have allowed a presumption that the absent party has procured a divorce. A more correct statement perhaps would be that the burden is cast upon the party asserting guilt or immorality to prove the negative—that the first marriage had not ended before the second marriage.' (*Hunter* v. *Hunter*, 111 Cal. 261–267 [52 Am. St. Rep. 180, 31 L. R. A. 411, 43 Pac. 756].) . . . In *McKibbin* v. *McKibbin*, 139 Cal. 448 [73 Pac. 143], it was held that proof of a prior marriage and the continued life of both spouses was not sufficient to make a *prima facie* case as against a second ceremonial marriage; that there must be further showing that the first marriage had not been set aside by judicial decree. The books contain many similar decisions, but it is not necessary to go outside of California for authority. We will refer, however, to the frequently cited case of *Maier* v. *Brock*, 222 Mo. 74 [133 Am. St. Rep. 513, 17 Ann. Cas. 763, 120 S. W. 1167], which in its facts is very similar to

the one at bar. It was a suit for assignment of dower. Plaintiff had married Maier in Germany in 1865. In 1866 he left her and came to America. In 1885 he visited Germany and she then saw him for the last time. It was shown that in 1872 he married another woman and lived with her until her death. In 1885 he married Mary Baldruff and lived with her until she died. He then married another woman and was divorced from her. In 1902 he married Nora Carl and lived with her until his death in 1904. The finding of the court in favor of defendants was upheld. Many of the leading cases were there discussed, and upon the very presumption upon which respondent here depends the judgment was upheld.

''We conclude that the court was justified in finding that the plaintiff was not Hughson's wife at the moment of his death.''

As the trial court found that appellant was not the wife of Thomas Immel at the time of his death, and as, under this finding and the cases cited, she did not sustain the burden of proof cast upon her of establishing that Thomas had not secured a divorce from her, the judgment is affirmed.

Barnard, P. J., and Jennings, J., concurred.