[Civ. No. 4215. First Appellate District, Division One.—July 1, 1922.]

In the Matter of the Estate of FRANK PERRY, Deceased. MINNIE PERRY, Respondent, v. MARY ELLA CRABTREE, Appellant.

[1] MARRIAGE—SOLEMNIZATION—PRESUMPTION OF LEGALITY.—Where a marriage has been duly solemnized, there is a strong presumption that it is legal.

[2] ID.—INVALID SECOND MARRIAGE—BURDEN OF PROOF.—The burden is cast upon a party asserting the invalidity of a second marriage because of an existing prior marriage to prove that the first marriage had not been terminated.

[3] ID.—DESERTION BY FIRST HUSBAND—SUFFICIENCY OF EVIDENCE.— In this contest for letters of administration between the surviving widow of the deceased and a daughter of the deceased by a former marriage, which involves the validity of the former's marriage to the deceased on the theory of a prior existing marriage between her and a third person, the evidence is amply sufficient to support the conclusion that her first husband deserted her.

[4] ID. — LEGALITY OF SECOND MARRIAGE — SUPPORT OF FINDING. — The finding in this proceeding sustaining the validity of the wife's second marriage is upheld as being in accordance with the expressed policy of the law to legalize marriages, if possible.

[5] HUSBAND AND WIFE — DESERTION BY HUSBAND — IGNORANCE OF WHEREABOUTS—SEARCH BY WIFE BEFORE REMARRIAGE.—Where a husband deserted his wife and remained absent for fifteen years without advising her of his whereabouts, she was not required before remarrying to make inquiry or search for him.

2. Presumption and burden of proof as to validity of subsequent marriage, notes, 89 Am. St. Rep. 198; 17 Ann. Cas. 680; Ann. Cas. 1918E, 1233.

APPEAL from an order of the Superior Court of Mendocino County denying an application for letters of administration.  H. L. Preston, Judge.  Affirmed.

The facts are stated in the opinion of the court.

W. D. L. Held for Appellant.

Will Van Dyke and Hale McCowen, Jr., for Respondent.

KNIGHT, J., *pro tem.*—On July 22, 1921, the superior court of Mendocino County made its order appointing the respondent, Minnie Perry, as administratrix of the estate of Frank Perry, deceased, upon the ground and for the reason that she was the surviving widow of said deceased, and by the same order denied the application for letters of administration of Mary Ella Crabtree, a daughter of said deceased by a former marriage.  Mary Ella Crabtree has appealed.

On August 27, 1887, the respondent, Minnie Perry, who is the issue of a marriage between a white man and an Indian woman, at the age of thirteen years married one Charles Wathen, with whom she lived, in Sierra City, until about November 1, 1888.  Wathen at that time left his wife, intending, as he stated, to go to Brown's Valley to pasture some stock, but instead of doing so went to Chico.  Failing to return, Mrs. Wathen, about December 1, 1888, left Sierra City and returned to her folks at Covelo, in Round Valley.  Before she left, however, she wrote to Wathen, stating where she was going and where he might find her upon his return.  Within a few days after receiving that letter Wathen returned to Sierra City, but, finding that his wife had already gone, gathered his belongings and returned to Chico.  Wathen and his wife did not thereafter see each other until subsequent to the death of Perry, when Wathen was produced as a witness in this proceeding.  Neither did they correspond with each other after their separation, except that Wathen claims he wrote to his wife once or twice within six months or a year after their separation.

On October 11, 1903, fifteen years subsequent to the date of the desertion of Mrs. Wathen by her husband, she as-

sumed the relation of wife with Perry, and continued to live with him, as his wife, until his death. In September, 1904, while living with Perry, the respondent consulted an attorney concerning her marital status with Wathen, with the result that an action for divorce was commenced by her against Wathen upon the ground of desertion. The summons was served by publication, and on October 22, 1906, respondent obtained an interlocutory judgment of divorce. Respondent claims that a year later, in November, 1907, her attorney exhibited to her a document which she understood was the final judgment of divorce, and said: "You and Frank [meaning Perry] go ahead and get married; you are all right now." The truth of this testimony could not be corroborated by respondent, for the reason that said attorney died some six years prior to the date on which the present proceeding was tried. Respondent and Perry did not marry, however, until eighteen months after she was shown said document, to wit, on May 8, 1909, at which time they were married by a minister of the gospel, under a license duly issued by a special United States Indian agent.

As a matter of fact, the document shown respondent by said attorney in November of 1907 was not the final judgment of divorce, because the judgment-roll in the divorce proceeding shows that said final decree was not rendered or entered until November 30, 1909, a period of about six months subsequent to the date of the marriage of respondent to Perry. There is no proof in the record showing that respondent ever knew, prior to Perry's death, of the entry of said final decree, other than the statement made to her by her attorney in 1907.

The sole question presented by the appeal is whether or not there is sufficient evidence in the record to support the finding of the trial court that Perry's marriage to respondent was legal. [1] It is conceded that said marriage to Perry was regularly and duly solemnized. There is, therefore, a presumption, "a very strong one," as the supreme court has said (*Wilcox* v. *Wilcox*, 171 Cal. 770 [155 Pac. 95]), that said marriage is legal. [2] Furthermore, it is the well-established law that "the burden is cast upon the party asserting guilt or immorality to prove the negative—

that the first marriage had not ended before the second marriage." (*Wilcox* v. *Wilcox, supra.*)

Subdivision 2 of section 61 of the Civil Code provides: "A subsequent marriage contracted by any person during the life of a former husband or wife of such person, with any person other than such former husband or wife, is illegal and void from the beginning, unless; . . . 2. Unless such former husband or wife is absent, and not known to such person to be living for the space of five successive years immediately preceding such subsequent marriage, or is generally reputed or believed by such person to be dead at the time such subsequent marriage was contracted. In either of which cases the subsequent marriage is valid until its nullity is adjudged by a competent tribunal."

If, therefore, Wathen was absent from respondent, and was not known to her to be living for the space of five successive years immediately preceding her marriage to Perry, her marriage to Perry is valid.

The legality of the Perry marriage is attacked by appellant upon two principal grounds: First, upon the ground that Wathen was not "absent" from respondent, within the meaning of the code section quoted, for the reason, as appellant contends, that the desertion was committed by respondent, and not by Wathen. Secondly, upon the ground that the evidence offered and received in the present proceeding proves that "respondent must have known her husband to be living for the space of five successive years immediately preceding her marriage to Frank Perry."

[3] The answer to the first contention is to be found in the terms of the judgment for divorce itself, wherein it is decreed that it was Wathen, and not respondent, who was guilty of desertion; and again, in the evidence in the present proceeding, from which it would appear that in the fall of 1888 Wathen, without cause, left his wife, then only fourteen years of age, among strangers, and went away without informing her how long he was going to be gone or when he would return. After waiting six weeks for his return, she notified him by letter that she intended to go back to her folks at Covelo and requested him to come for her there. He did not return to Covelo, however, for twenty years, and then only temporarily, and did not see respondent. Neither did she see him or know he was there or

had been there. In fact, Wathen did not see respondent for approximately thirty-two years from the day he left her, although he knew, at all times, where she was and where he might find her. This evidence is amply sufficient, we think, to support the conclusion reached by the trial court that the desertion was committed by Wathen.

[4] Appellant's·second contention, to the effect that respondent must have known, within five years next before she married Perry, that her husband was living, is based upon three points, viz.: the commencement and prosecution of the divorce proceeding, and the testimony given by respondent therein; the admissions made by respondent while testifying in the present proceeding; and the asserted fact that Wathen visited and conversed with respondent's attorney within said five-year period.

Opposed to appellant's contention is the positive testimony of respondent given in this proceeding, to the effect that for five years next preceding her marriage to Perry she knew nothing of Wathen's whereabouts, or whether he was dead or alive.

Upon this conflicting evidence the trial court found adversely to appellant's contention, and there is sufficient evidence before us, we believe, to fully support the trial court's conclusions.

So far as the divorce proceedings are concerned, the trial court may well have concluded, as it doubtless did, that respondent being uncertain as to her marital status with Wathen, consulted her attorney, and that it was upon the advice and suggestion of her attorney that a divorce should be obtained simply as a precautionary measure to legally establish respondent's status as a single person. It may be, as contended by appellant, that the one or two excerpts from the affidavit for publication of the summons, and from the testimony given by respondent in support of her suit for divorce, might, if standing alone, imply that respondent entertained a belief that Wathen, at that time, might be living, but when the affidavit and the testimony are read in their entirety, we do not think that either is fairly susceptible of such construction. It is stated in the affidavit, in plain terms, that for over a year every effort had been made to obtain service on Wathen, but without avail; that the summons had been sent for service to the

sheriff of Butte County and also to two constables in other localities, but Wathen could not be found. Furthermore, we are unable to say whether or not the trial court gave any weight at all to said affidavit, for the reason that respondent testified that she neither read said affidavit nor knew its contents before she signed it; that it was presented to her for signature by her attorney and she signed it without question. And whatever conflict there may have been in respondent's testimony in the divorce proceeding, she did positively testify therein: "We came back to Sierra County and stayed a month or two, and one day he left and said he was going to Brown's Valley, but he did not go there and I never heard of him since."

[5] Concerning the testimony given by respondent in the present proceeding, appellant contends that it shows that respondent was possessed of sufficient knowledge of the whereabouts of Wathen to place her upon inquiry, and that had she pursued those inquiries and searched for him, she would have discovered that he was alive.

We do not understand that under the circumstances here shown and in view of the fact that Wathen deserted respondent, the law imposed any such duty upon her. In the *Estate of Harrington,* 140 Cal. 244 [98 Am. St. Rep. 51, 73 Pac. 1000], the same contention was made under a quite similar state of facts, and the court said: "Counsel's principal claim in this respect is, that it does not appear from the evidence that appellant previous to her marriage with Carley made any endeavor to ascertain the whereabouts of Harrington. This she was not required to do. It was the duty of the latter to keep her advised of his whereabouts, and she had a right to believe, as she testified she did, from silence for ten years, that he was dead. (*Jones* v. *Zoller,* 39 N. Y. 285.)"

Neither do we find any force in the argument of appellant that because Wathen, during the course of the divorce proceedings, conversed with respondent's attorneys unknown to respondent, that the latter is charged with the knowledge of her attorney. Appellant sought to prove that conversation by the testimony of Wathen, but the court, on account of Wathen's conduct toward respondent, may not have believed him. Even if Wathen's testimony is to be

accepted as true, we are not prepared to say that the situation presented is one which calls for the application of the doctrine of constructive notice.

After fully and carefully examining the record, disclosing, as it does, a conflict on the vital point at issue, we are not prepared to say that the trial court's conclusions on the question of the Perry marriage are erroneous. In fact, we believe, from the evidence presented, that its decision was just and in accordance with the expressed policy of the law, which is to uphold, if possible, the legality of marriage.

In *McKibbon* v. *McKibbon*, 139 Cal. 448 [73 Pac. 143], the trial court, in speaking of a situation like the one presented here, said: "I am inclined to take the view that proof of solemnization, aided by the presumption that the solemnization was regular, would overcome the presumption of bigamy, that would result if she had two husbands." With these views the supreme court agreed. The doctrine of *McKibbon* v. *McKibbon* has since been expressly approved in *Wilcox* v. *Wilcox, supra*. In each of those cases the court quotes approvingly from 1 Bishop on Marriage and Divorce, sections 946–948, as follows: "Every intendment of the law leans to matrimony. When a marriage has been shown in evidence, whether regular or irregular, and whatever the form of proof, the law raises a strong presumption of its legality—not only casting the burden of proof on the party objecting, but requiring him throughout, in every particular, to make plain, against the constant pressure of presumption, the truth of law and fact that it is illegal and void."

The technical objections made by appellant against the validity of the judgment of divorce upon the grounds that neither the complaint nor the affidavit on which constructive service of summons was based stated a cause of action are immaterial, in view of the fact that the legality of the Perry marriage in nowise depends upon the validity of the divorce proceeding.

For the reasons above stated the order appealed from is affirmed.

Tyler, P. J., and Kerrigan, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on August 28, 1922.

All the Justices present concurred.

Richards, J., *pro tem.*, and Myers, J., *pro tem.*, were acting.