NEW YORK COUNTY.—HON. D. G. ROLLINS, SURROGATE.—
February, 1882.

## MACHINI v. ZANONI.

*In the matter of the estate of* ANTONIO D. GHIO, *deceased.*

Where a woman flees from her husband and enters immediately on illicit relations with another man, which she continues for five years, there is no presumption at the end of that time, in the absence of evidence to the contrary, that her husband is dead.

The petitioner was married to M. in 1855, and lived with him in New York city until 1861, when she suddenly left his house, and, going to premises provided by decedent, cohabited with him until his death, in 1881, never again seeing M., or concerning herself about him. The cohabitation with decedent was confessedly meretricious until 1865, during which year, according to petitioner's testimony, a sort of ceremonial occurred, which she deemed a marriage between them. On her application for letters of administration, as being decedent's widow, on the ground that, although she and M. had not been separated for five years when her alleged marriage with decedent occurred, their continued cohabitation after the lapse of that period, and the fact of their holding themselves out as husband and wife, raised the presumption of a marriage which was valid until annulled, under 2 R. S., 139, § 6, making such a provision in a case where a "person, whose husband or wife shall have absented himself or herself, for five years, shall marry," etc.,—

*Held,* that M., not having "absented himself," the statute did not apply, and that, there being no proof or presumption of his death, any marriage between petitioner and decedent was absolutely void under 2 R. S., 139, § 5, and the petition should be denied.

APPLICATION for letters of administration upon decedent's estate, and for the revocation of such letters already granted to his sister, Augustina L. Zanoni. The facts appear sufficiently in the opinion

LORENZO ULLO, *for petitioner.*

HORATIO F. AVERILL, *for administratrix.*

THE SURROGATE.—Ghio died in June, 1881.   In July, letters of administration were granted to his sister.   The petitioner subsequently applied for the revocation of those letters, claiming that she herself was the widow of the deceased, and as such entitled to administer upon his estate.   This was disputed, and thereupon a reference was ordered for taking testimony as to whether, at the time of Ghio's death, the petitioner was his lawful wife. The referee has filed his report, together with his opinion, which is adverse to the claim of the petitioner.   By her own testimony, it appears that, in the year 1855, she was married to one Andrew Machini, and that, in 1861, she was living with him in Sullivan street, New York city.   One morning in January of that year, after her husband had left the house, and without previous announcement of her purpose, she betook herself to premises provided for her by the decedent Ghio, lived with him thereafter, as if she were his wife, until his death in 1881, and, from the day when she abandoned Machini, never saw him, and, so far as is disclosed by the testimony, never tried to see him, or concerned herself as to his whereabouts.   Her intercourse with Ghio was confessedly meretricious until 1865.   In that year, if the petitioner is to be believed (and I agree with the referee that under all the circumstances her story may well be doubted), some sort of a ceremonial occurred, which she deemed a marriage between herself and Ghio.   An old man, with a name "something like Olse, but longer than that," whom she had never seen before, and never saw afterwards, and whom she believed to be a notary, asked her if she was willing to marry Ghio, and she answered "Yes."   And then "Olse" announced that she was to

be faithful to Ghio, and that they were man and wife. So far as she knows, Ghio was asked no question, made no promises, and received no injunctions of fidelity, and the occurrence was never afterward a subject of remark between herself and him.

It is declared by statute that a second marriage contracted by any person, during the life-time of a former husband or wife, is absolutely void, unless such former husband or wife has been sentenced to life imprisonment, or unless the first marriage has been annulled or dissolved (3 *R. S.* [6 ed.], 148, § 4, subd. 1, 2).

Now, it is not claimed that the marriage between Machini and the petitioner was ever annulled or dissolved, or that he was ever sentenced to life imprisonment. Any intermarriage, therefore, of Ghio and the petitioner was absolutely void, if it occurred during the life-time of Machini.

This raises the question whether, in the absence of any direct evidence on the subject, Machini must be presumed to be alive, or must be presumed to be dead. The petitioner swears that, in 1864, Ghio and somebody else told her that her husband was dead. This is manifestly insufficient evidence of the fact of death, and no stress is laid upon it by the petitioner's counsel.

But it is urged that this case falls within an exception to the statutory provision above cited, which is as follows: "If any person whose husband or wife shall have absented himself or herself, for the space of five successive years, without being known to such person to be living during that time, shall marry during the lifetime of such absent husband or wife, the marriage shall be void only from the time that its nullity shall be pro-

nounced by a court of competent authority" (*Id.*, § 5).

It is insisted that, although Machini and the petitioner had not been separated for five years when her alleged marriage with Ghio took place, their continued cohabitation after the five years had elapsed, coupled with the fact that they held themselves out to the world as husband and wife, raises a presumption of a new marriage, which is valid until annulled ; that the law will rather presume Machini to be dead, than the petitioner to be guilty of bigamy, and that this court must, accordingly, find her to have been Ghio's wife at the time of his decease. The brief of counsel, in advocacy of this claim, is ingenious, and the authorities cited to some extent support his position.

It is, doubtless, the law of this State that a second marriage of one who is within the prohibition of the statute may be inferred from matrimonial cohabitation, after the death of the person whose continued life caused the disability. To this effect are the decisions in Rose *v.* Clark (8 *Paige*, 574) ; Fenton *v.* Reed (4 *Johns.*, 52) ; Hyde *v.* Hyde (3 *Bradf.*, 509).

But those cases are unlike the present case, because there is no evidence here that Machini is dead. It is, however, insisted that his death must be inferred from his long absence, and numerous authorities are cited as sustaining that position. It will be found, upon careful examination, that they lend it no support. The analogy of those cases to the present would be complete, if it had been Machini, instead of the petitioner, who had disappeared from home with a paramour.

The exception of the statute is in favor only of one

whose husband or wife shall have absented himself or herself for the space, etc. If A. and B. are together, and A. goes away, the situation is somewhat inaccurately described by saying that B. has "absented himself." In this respect, the case under consideration differs from those cited. See Jackson *v.* Claw (18 *Johns.*, 346); King *v.* Paddock (18 *Id.*, 141); Cochrane *v.* Libby (18 *Me.*, 39); Greensborough *v.* Underhill (12 *Vt.*, 604); Lockhart *v.* White (18 *Texas*, 102); Rex *v.* Inhabitants of Twyning (2 *Barn. & Ald.*, 386); Spears *v.* Burton (31 *Miss.*, 550).

EYRE, C. B., once characterized the application of the doctrine of presumption, in a case of this character, as an instance of "presumption run mad." But the doctrine there urged was by no means as mad as the one here sought to be maintained. A woman flees from her husband, and enters immediately upon illicit relations with another man. She continues those relations for five years. It is claimed that, at the end of that period, in the absence of any evidence to the contrary, the law will presume that her husband is dead. I think not. On the contrary, in the absence of any evidence to the contrary, if anything is to be presumed for the purposes of this proceeding, it must be that Machini is still in Sullivan street, where he was living twenty years ago. The conclusion which I have reached in this case is strongly supported by the decision in O'Gara *v.* Eisenlohr (38 *N. Y.*, 296), and by Foster *v.* Hawley (8 *Hun*, 71).

I find that the referee is correct in his opinion, and direct that the petition herein be dismissed.

Ordered accordingly.