(28 Misc. Rep. 638.)

### ALIXANIAN v. ALIXANIAN.

(Supreme Court, Special Term, New York County.    August, 1899.)

MARRIAGE—VALIDITY—PRESUMPTION OF DEATH.

>   Where a husband was sent to the penitentiary for an assault on his wife, and she did not see him thereafter for five years, whereupon she married, there was no presumption, at the time of the second marriage, that the first husband was dead; 2 Rev. St. p. 139, § 6, providing that if any person whose husband or wife shall absent himself or herself for five years without being known to be living shall marry again during the lifetime of such absent person the marriage shall be void only from the time its nullity shall be pronounced by the court, not applying to such case.

Action for separation by Sarah M. Alixanian against Mihran H. Alixanian.    Complaint dismissed.

Campbell & Hance (H. H. Walker, of counsel), for plaintiff.
A. V. Campbell, for defendant.

RUSSELL, J.    The plaintiff is entitled to a separation from the defendant if she was his lawful wife, for his abandonment of her is in law a desertion in case he owed her the obligations due from a husband to a wife.    A lawful ceremony of marriage was performed between the parties, and the question to be solved is as to the right of the plaintiff to marry at the time the ceremony was performed.    At

that period she was a lady 41 years of age; the defendant husband only 24. The marriage took place in the year 1894. In December, 1887, the plaintiff married Arthur Prevot. They lived together for a few weeks, had a quarrel in July, 1888, and in August following, on her complaint, he was sentenced to the penitentiary for six months for choking her. She claims not to have seen him since the trial in police court. But the evidence in that respect is not entirely satisfactory, in view of the testimony of the defendant, and her entire absence of inquiry as to the whereabouts of Prevot. Her excuse for the want of inquiry is that some strange woman appeared, who claimed to be Prevot's wife; but no investigation was made by the plaintiff to ascertain the merits of that claim, or whether she had not just cause for repudiating any marital obligation to Prevot. Acting, apparently, upon the theory that five years' cessation of living with her husband freed her from the obligation of marriage, she enters into the marital relation with the defendant; that result being obtained, as is evident from the relative ages of the parties, and their respective powers of self-dependence, not entirely from the ardent solicitation of the young man. There is no presumption of the law that at the time of the second marriage, in 1894, the first husband, Prevot, was dead. Independently, therefore, of any statutory law, that second marriage was void. For the protection of the legitimacy of children, and to give the honest abandoned one relief from a tie which death has probably freed her from, but where the power to prove death may be unavailable for want of ability to trace a fugitive, our statute (2 Rev. St. p. 139, § 6) provides as follows:

"If any person whose husband or wife shall have absented himself or herself, for the space of five successive years, without being known to such person to be living during that time, shall marry during the lifetime of such absent husband or wife, the marriage shall be void only from the time that its nullity shall be pronounced by a court of competent authority."

This statute was, however, not designed to militate against the commonly-received belief that civilized intelligent society rests upon the correct maintenance of the marital tie of monogamous marriage. It is not designed to allow a couple by mutual understanding to separate, take no steps to hear from the other, or inquire from friends or relatives where that other is, and, after five years, contract new marriage relations on the theory that a five-years statute of limitations runs against a marriage. It is founded upon the basis that marriage brings obligations upon both parties, and that one of those obligations is for each to concern himself or herself as to the whereabouts of the other, and, in case of unexplained absence, to make search through the channels of information afforded by relatives or friends. And where, as in this case, the husband is turned out from the home of the wife, and forced into prison, upon her complaint, however just that complaint may be, she may not rest unconcerned as to his future for the sole purpose of freedom by accruing time; but, while she may have exemption from marital subservience on account of brutal conduct, she must exercise proper diligence to entirely free herself from the yoke to avoid, by the fair belief of death, the having two or more husbands living, from none of whom has she been divorced. Gall v.

Gall, 114 N. Y. 109, 21 N. E. 106. I am of the opinion that upon the facts in this case the husband did not absent himself voluntarily for the period of five successive years without being known to the wife to be living during that time, nor that she in good faith actually believed that husband to be dead when she married the defendant, and the complaint is therefore dismissed.

Complaint dismissed.