## In the Matter of the Estate of Joseph Avras, Deceased.

Surrogate's Court, Bronx County, December 21, 1931.

*Kramer & Binder*, for the petitioner.

*Louis Kroll*, for the respondent.

Henderson, S. The petitioner, the alleged widow of the decedent, seeks to have the letters of administration heretofore issued to the respondent revoked. He is a son of the decedent. The petitioner was not mentioned in the petition for letters and was not cited in that proceeding. Upon the hearing to determine the petitioner's status, it was shown that in 1918, the date of the alleged non-ceremonial marriage, the decedent and the petitioner were introduced by a mutual acquaintance who testified that about two years after the introduction the decedent told her that he had married the petitioner. Another mutual friend of the decedent and the alleged widow testified that about ten or twelve years ago the decedent told him that the petitioner was his wife. The decedent, the petitioner and the respondent were active members of the Independent Winitzer Leon Braunstein S. B. Association. Only the wives of male members were admitted to membership in the association. The decedent proposed the petitioner for membership in

1924 stating that she was his wife, and she was admitted to membership on July 18, 1925. A number of the members of the association were intimate friends of this couple. They visited frequently at the home and entertained the decedent and the petitioner in their homes. The decedent and the petitioner lived together and he always introduced her as his wife. She attended the wedding of the respondent as his stepmother and at the wedding and at the club meetings he called her " Ma." One Mayer L. Braunstein, a member of the society for over seventeen years, said that it was his recollection that the decedent joined the society about nine years ago as a single member and later introduced the petitioner as his wife. This is the only piece of credible testimony that the decedent during the thirteen years of the alleged marriage held himself out as an unmarried man, and it may well be that the memory of this witness is faulty as to the time when the deceased became a member. One witness was a roomer in the home of the decedent from October 1, 1925, until the death. He rented a room in response to an advertisement, and when Joseph Avras came home that evening, the petitioner introduced the decedent as her husband. During his residence with them they occupied the same room and he knew them as husband and wife. The petitioner was married ceremonially to one Rosenberg who deserted her and her four children in 1901 while they were domiciled in New York city. The petitioner and her son, Felix Rosenberg, endeavored to find the first husband, but were unable to get any trace of him since the date of the desertion. These efforts extended until some time between 1912 and 1914. I find that there was a common-law marriage between the decedent and the petitioner in 1918.

There remains the question as to whether the petitioner was free to make a marriage contract at that time by reason of her first marriage. Prior to March 25, 1922, and at the time the marriage with the decedent was contracted, the Domestic Relations Law, section 6 (as amd. by Laws of 1915, chap. 266), provided: "A marriage is absolutely void if contracted by a person whose husband or wife by a former marriage is living, unless either: * * * 3. Such former husband or wife has absented himself or herself for five successive years then last past without being known to such person to be living during that time." Section 7* provided: "A marriage is void from the time its nullity is declared by a court of competent jurisdiction if either party thereto * * * 5. Has a husband or a wife by a former marriage living, and such former husband or wife has absented himself or herself for five successive years then last past without being known to such

---

* See Laws of 1909, chap. 14.— [REP.

party to be living during that time." Subdivision 3 of section 6 was amended by section 1 of chapter 279 of the Laws of 1922. Subdivision 5 of section 7 was repealed by section 2 of that act. By section 3 of the same chapter section 7-a, popularly known as the " Enoch Arden Act," was added to the Domestic Relations Law. It does not appear that the petitioner's first husband is living. Efforts to trace him have been in vain. If it is assumed that he is living, the petitioner's second marriage is voidable and is a nullity only from the time it is so declared by a court of competent jurisdiction. It cannot be attacked collaterally by the respondent. Such a proceeding could only have been brought by the first husband, the petitioner or the decedent. (Civ. Prac. Act, § 1134.) The petitioner's status, as the widow of the decedent, became fixed upon the death of her second husband. The petitioner contracted a valid marriage with her second husband, which was voidable if the first husband were found to be living and an action for annulment had been brought by either husband or the petitioner. As the second marriage was not annulled, she is the widow of Joseph Avras, the decedent. (*Dodge* v. *Campbell*, 229 App. Div. 534, 539.)

It follows, therefore, that the grant of letters of administration to Sam Avras was obtained by a false suggestion of a material fact, and his letters must be revoked.

Costs to the petitioner against the respondent. Settle decision and decree revoking the letters of administration heretofore granted to the respondent and directing him to account.