In the Matter of the Estate of IRVING A. MERRILL, Deceased.

Surrogate's Court, Oneida County, March 15, 1932.

*Pratt & Fowler*, for the administratrix.

*Dan T. Burke*, for Mabel M. Davidson.

EVANS, S. This is a proceeding to determine which of two women is the widow of the decedent and entitled to letters of administration on his estate.

The decedent died intestate in the city of Utica, N. Y., on May 8, 1931.

A petition was thereafter filed with this court by Margaret Merrill, in which she alleged that she is the widow of the decedent. She filed a bond as administratrix and letters were issued to her on May 16, 1931. On July 17, 1931, a petition was filed with this court by Mabel Wilkinson Merrill Davidson, in which she alleged that she is the widow of the decedent and entitled to administer his estate and that letters issued to Margaret Merrill should be revoked.

The issue thus raised was tried before the court without a jury.

For the purpose of brevity Margaret Merrill will be designated as the respondent and Mabel Wilkinson Merrill Davidson as the petitioner. There is practically no question of fact in dispute. The decedent and petitioner were married at Stark, N. H., on August 25, 1903. The issue of this marriage are three sons named Elmer, Ernest and Edgar, who were born between the years 1904 and 1910, inclusive. The family came to Utica to live in 1914.

There is some slight disagreement in the testimony as to time, but it is apparent that either during the years 1915 or 1916 the petitioner deserted her husband and three small children and never returned to Utica until October, 1931, when she came as a witness in this proceeding.

According to her evidence she was acquainted while in Utica with a man named Davidson who at some time lived in that city. She had left her family on other occasions prior to her permanent disappearance. According to her story, in 1917 she began living with Davidson as his common-law wife in the city of Philadelphia and is living with him now. A marriage certificate was admitted in evidence showing a formal marriage on May 23, 1931, by a justice of the peace of the petitioner and Davidson.

The petitioner gave birth to children in 1918, 1921, 1922 and 1925, of whom Davidson is the father. The birth of each of these children was reported to the bureau of vital statistics in Philadelphia and the parents described themselves as husband and wife. From the beginning of their cohabitation, the petitioner was supported by Davidson and acknowledged as his wife.

She heard nothing from the decedent for a period of many years. She was ignorant of the fact of whether he was alive or dead, and heard nothing from him until one of her sons by Mr. Merrill visited her in 1928.

She publicly and privately claimed to be the wife of Davidson and became the mother of his children.

This state of affairs presents one of two main angles to this controversy. The other aspect of the case concerns the conduct of the decedent after the petitioner disappeared. His children were placed in a local orphan asylum. At a time within a year after his wife left him the decedent and respondent left Utica for a few days and on their return announced that they had been married. The maiden name of respondent Margaret Reagan was changed on the mill records where she and decedent were employed to Margaret Merrill.

Decedent told numerous friends and acquaintances that the respondent was his wife. She was known in Utica as Mrs. Merrill. They established a home and removed the Merrill boys from the

orphan asylum to the new home and the respondent cared for them as a mother. One child was born to this couple. A son, James Merrill, was born in 1918 and is now living with his mother. The decedent and respondent lived together as husband and wife until the death of the decedent. There is evidence of numerous witnesses that the decedent many times declared that he did not know or care where the petitioner was and that he intended to obtain a divorce from her.

These are the salient facts and bring us to a consideration of the law in its bearing on the controverted question.

Counsel for the respondent, among other reasons for sustaining the right of his client as the widow of the decedent, urges that in view of the fact that both women are the mothers of children born since the separation of the decedent and petitioner, the presumption of legitimacy of children is stronger than the presumption of the continuity of the original ceremonial marriage.

This requires a finding by the court as a presumption that a divorce was obtained dissolving the marriage between the decedent and the petitioner. The relative weight of the two presumptions is probably correctly stated, but the events in connection with the case at bar are too recent and too capable of direct proof to warrant this presumption. I think there is no evidence of a divorce and no basis upon which such a presumption can be invoked.

While not a necessary element in reaching a decision, it seems worthy of passing attention to briefly refer to the status of the petitioner in so far as her own acts are concerned. Can a woman who is lawfully married desert her husband and little children and depart to another jurisdiction, contract what she conceives to be a common-law marriage, raise a new family of children, bear the name of her common-law husband, and after an absence of fifteen years return to her former home and successfully maintain that she is the " widow " of the deserted husband who has died during her absence. Such a proposition seems shocking to a normal sense of justice.

Administration is given first " to the widow."

The law contemplates the possible existence of but one and makes no provision for a struggle of priority between two or more. (*Matter of Ensign*, 103 N. Y. 284.)

This case decided adversely the contention of a woman who was divorced, whether innocent or not, that she was not the widow of her former husband who was deceased.

While a pertinent objection may be raised that we are not dealing with a situation where any of the parties were divorced, yet I think the attitude of the courts of this State reveals an intent to deny

legal sanction to a course of conduct admitted by the petitioner. The courts of this State decline to recognize the validity of divorce where the plaintiff has departed from this jurisdiction and obtained a divorce in another State for a cause not recognized here and where there is no appearance by a defendant in the foreign jurisdiction.

However, it has been held in this department (Fourth) that a wife who procures a divorce in the manner above mentioned and remarries is not the widow of the first husband upon his decease.

ADAMS, P. J., in an opinion announced the law as follows: " Indeed, it would be something of a reproach to our system of jurisprudence, as well as contrary to public policy, were a married woman permitted to invoke the jurisdiction of a foreign court as a justification for entering into and maintaining marital relations with a third party and then to repudiate such election merely for the purpose of obtaining the property of the husband from whom she claimed to be divorced." (*Matter of Swales,* 60 App. Div. 599.)

We have here a case involving the same principle. While no divorce was obtained by the petitioner, she has submitted proof by her own admission of all the elements of a valid common-law marriage as defined and construed in this State and which is authorized by sections 6 and 7 of the Domestic Relations Law, as amended. While this phase of the case is not controlling, I think that the petitioner is practically estopped from claiming to be the widow of the decedent.

It is now necessary to analyze the status of the respondent and her claim as the alleged widow of the decedent. The declarations of the decedent that he and the respondent were married at the time that they began living together, of course, were untrue. He was not free at the time to marry any one. The relations of this man and woman were in their inception illicit.

Whatever criticism may be leveled at the respondent on this account should be tempered by the fact that after the desertion by their own mother, the three small sons of the petitioner were taken from the orphan asylum and well cared for by the respondent. The best evidence of this is the testimony of one of them, now a married man. (S. M. 87.)

As a matter of law did the origin of the relations constitute a perpetual barrier to a legalized common-law marriage? " Marriage, so far as its validity in law is concerned, continues to be a civil contract, to which the consent of parties capable in law of making a contract is essential." (Dom. Rel. Law, § 10.)

According to the undisputed facts in this case the petitioner absented herself for a period of at least fifteen years. One of her

sons by the decedent visited her in 1928. There is no evidence that he communicated this fact to the decedent.

It is conceivable that the son told his father that the petitioner was alive. In any event this fact is wholly immaterial. The decedent last heard from the petitioner in 1916. Thereafter he had no knowledge of her. He was free to contract a common-law or ceremonial marriage after five years. This right accrued in 1921.

A marriage under the circumstances was voidable and only subject to attack by the erring wife. (Dom. Rel. Law, § 7, subd. 5.)■

The possible knowledge by the decedent in 1928 that his first wife was alive did not restore to her any marital rights, provided a legal voidable marriage had then been entered into by the decedent and the respondent.

" A marriage is void from the time its nullity is declared by a court of competent jurisdiction, * * *." (Dom. Rel. Law, § 7.)

Common-law marriages have been valid in this State since January 1, 1908. (Laws of 1907, chap. 742; *Matter of Zeigler* v. *Cassidy's Sons*, 220 N. Y. 98.)

A present agreement between competent parties to take each other for husband and wife constitutes a valid marriage even if not in the presence of witnesses. (*Clayton* v. *Wardwell*, 4 N. Y. 230; *Brinkley* v. *Brinkley*, 50 id. 184.)

Such a marriage may be proved by showing actual cohabitation as husband and wife, acknowledgment, declaration, conduct, repute, reception among neighbors and relatives. (*Gall* v. *Gall*, 114 N. Y. 109; *Matter of Avras*, 142 Misc. 358.)

" Where, however, the cohabitation is illicit in its origin the presumption is that it so continues until a change in its character is shown by acts and circumstances strongly indicating that the connection has become matrimonial.

" It is sufficient if the acts and declarations of the parties, their reputation as married people and the circumstances surrounding them in their daily lives, naturally lead to the conclusion that although they began to live together as man and mistress they finally agreed to live as husband and wife. (*Caujolle* v. *Ferrie*, 23 N. Y. 90; *O'Gara* v. *Eisenloher*, 38 id. 286; *Badger* v. *Badger*, 88 id. 546, 554; *Hynes* v. *McDermott*, 91 id. 451, 457.) " (*Gall* v. *Gall*, 114 id. 109.)

In the case at bar after the lapse of five years from the time of the disappearance of the petitioner and all the attending circumstances set forth in the statement of facts there existed no impedi-

ment to a common-law marriage between the decedent and the respondent. Their course of conduct to the time of the death of the decedent indicates an honest and lawful intent.

" Courts should not be solicitous to nullify such intent and decree the relationship which they believed lawful to be unlawful and void. (*Leeds* v. *Joyce*, 202 App. Div. 696; affd., 235 N. Y. 620; *Matter of Wells*, 123 App. Div. 79; affd.,194 N. Y. 548; *Hynes* v. *McDermott*, 91 id. 451.) " (*Matter of Haffner*, 254 id. 238.)

I hold and decide that there was a valid common-law marriage between the decedent and the respondent and that she is his lawful widow, that the petitioner is not the widow of the decedent and that her petition should be denied and dismissed.

Motion on the part of the petitioners to strike out certain portions of the testimony is denied.

Decreed accordingly.