In the Matter of the Estate of ADAM KLIMENKO, Deceased.

Surrogate's Court, New York County, January 18, 1938.

*Jules Jacobs,* for the petitioner.

*Nathan Skolnik,* for the respondents.

*Frederick W. McGowan,* for the National Surety Corporation.

DELEHANTY, S. This is a proceeding to revoke letters of administration granted to respondent and another designated by her on a petition in which respondent asserted that she had the status of surviving spouse of deceased. The basis to the petition is the asserted fact that respondent could not validly enter into a marriage with the deceased and that in fact she is the wife of one Matheus Herasymczuk.

On September 6, 1914, a valid ceremonial marriage was entered into by respondent with Herasymczuk. Later husband and wife separated. Respondent here testified that she was deserted by Herasymczuk. On May 14, 1920, five years and eight months after her marriage to Herasymczuk, respondent executed in New York city an affidavit for the purpose of obtaining a license to marry deceased. In that affidavit she stated that within one month after her marriage to Herasymczuk he disappeared, and that she had never seen nor heard from him thereafter, although she had made substantial efforts to determine his whereabouts. On the basis of this affidavit and other supporting proof a license to marry was granted to respondent and deceased, and thereafter a ceremonial

marriage was entered into between them. They maintained a common domicile until the death of deceased. Some ten years after the marriage with deceased the latter obtained a certificate of naturalization. He there described himself as married. Deceased and respondent acquired property in their names as husband and wife. They had no children.

Despite the affidavit made in 1920 by respondent that she had seen her husband last one month after her 1914 marriage to him, it was established and is substantially admitted by respondent that Herasymczuk, her husband, prosecuted her and deceased on a statutory charge in one of the courts in New Jersey on or about April 1, 1916. It was proved also by a brother of deceased, the petitioner here, that he had seen Herasymczuk alive in the spring of 1921. The age of Herasymczuk warrants the presumption that he still lives. The proof shows that the fact assertions of search for Herasymczuk made by respondent in her application for the license to marry deceased were untrue and were known by her so to be. The facts above recited pose the question for decision.

Section 6 of the Domestic Relations Law in May, 1920, treating of void marriages, provided in part as follows:

" A marriage is absolutely void if contracted by a person whose husband or wife by a former marriage is living, unless either * * *

" 3. Such former husband or wife has absented himself or herself for five successive years then last past without being known to such person to be living during that time."

At the same time section 7 of that law concerned with voidable marriages made this provision:

" A marriage is void from the time its nullity is declared by a court of competent jurisdiction if either party thereto: * * *

" 5. Has a husband or wife by a former marriage living, and such former husband or wife has absented himself or herself for five successive years then last past without being known to such party to be living during that time."

The ceremonial marriage of deceased and respondent in May, 1920, would have been unconditionally valid on the assumption that respondent's first husband either had been divorced or had died. No suggestion that a divorce occurred was advanced at the hearing. That the first husband was living in May, 1920, must be presumed. This presumption controls altogether apart from the interested testimony of petitioner to the effect that he saw the absentee alive in the spring of 1921. Under the statute now being applied the presumption of an absentee's death could not arise until the expiration of five successive years following his disappearance. (*O'Gara* v. *Eisenlohr*, 38 N. Y. 296, 301, 302, which treated

of a seven-year period.) But it was admitted by respondent that she saw her first husband as late as April 1, 1916. Consequently, at the time of her 1920 marriage with deceased, no valid marriage could have been negotiated.

This 1920 marriage, moreover, was not merely voidable. It was void. The statute as of that time expressly provided that where a marriage was contracted by one having a living spouse the contract was void unless the absentee had been missing for five successive years without being known to the marrying spouse to have been alive during that time. The illicit character of the original relationship between respondent and deceased did not constitute an absolute bar to the emergence at a later date of a genuine matrimonial status. (*Badger* v. *Badger*, 88 N. Y. 546, 554; *Gall* v. *Gall*, 114 id. 109, 117, 118.) When attention is *exclusively* focused on the relationship between deceased and respondent for the ten or more years next prior to the former's death — their cohabitation, reputation as married, declarations that they were married, the taking of property in their names as married persons, etc.— argument in support of a marriage relationship here between deceased and respondent might seem possible. (*Matter of Haffner*, 254 N. Y. 238; *Matter of Crandall*, 214 App. Div. 363.) In the cases just cited it was pointed out that courts will not be solicitous to make " unlawful and immoral " a relationship which the parties regarded as " lawful and sacred." Each case was decided on a finding of fact that *at some time* during the illicit intercourse of the parties involved therein *they found themselves so circumstanced that every impediment to lawful wedlock had been removed.* Having *thereafter* cohabited apparently as man and wife it was held that a common-law marriage occurred. Neither case, however, is authority for the obviously untenable proposition that a person incompetent to contract a marriage can nevertheless validly marry.

The competency of respondent legally to marry deceased must be ascertained by determining whether she ever came within the statutory terms. She could not become competent to marry deceased unless both of two conditions were first fulfilled, namely, (a) that her husband had " absented himself " from her for a period of five successive years, and (b) that during such interval she had no knowledge that he was alive. In considering these conditions and the compliance thereafter by respondent we must start with the facts disclosed in this record. As early as 1916 at least respondent and deceased occupied a meretricious relationship to each other. Respondent's husband is shown to have sought public condemnation of that relationship. The making by respondent of the affidavit

of May 14, 1920, and the entry into a ceremonial marriage with deceased shortly thereafter compels the assumption that the illicit relationship had continued at least from 1916 to 1920. The record is barren of any history of Herasymczuk after 1916 (except petitioner's testimony as to seeing him in 1921), and is barren, too, of any proof that respondent made even the slightest effort to learn of her husband's whereabouts.

The first of the conditions precedent to valid entry into a remarriage has been interpreted in widely divergent ways. In *White* v. *Lowe* (1 Redf. 376, 381) it was argued that where a wife abandoned her husband she could not later look to the help afforded by the statute which authorized the making of a second marriage five years after a spouse had " absented himself." The surrogate reviewed the provisions of the Revised Statutes (which furnished the source for section 7 of the Domestic Relations Law as it existed in 1920) and concluded that the expression " absented himself " described " the fact of absence alone." The court held that it was not required of the person who contracted the second marriage that he should have been the innocent party in connection with the separation. This view of the statute seems to be unsound. An interpretation which seems to be more reasonable was given in *Machini* v. *Zanoni* (5 Redf. 492, 495, 496) and in *Jones* v. *Zoller* (29 Hun, 551, 554). These cases held that where A and B are together and A goes away it is incorrect to say that B has " absented himself." He has not done anything which involves absenting himself since he has not concealed his whereabouts " from the ordinary and usual opportunities of identification." In the present case respondent said that she was deserted by her first husband. This testimony is a restatement merely of her perjurious affidavit of 1920. It is to be entirely disregarded in accordance with the maxim *falsus in uno, falsus in omnibus.* Her husband had confronted her in court on April 1, 1916, and there challenged the association with deceased on the development of which respondent now relies for her claim against deceased's estate. It is obvious, of course, that as respondent was then situated there was no one whose existence and whose whereabouts she desired to know less about than her husband's.

If, however, it be assumed for the sake of the discussion that the first husband of respondent " absented himself " within the meaning of the statute, her position is not improved. His disappearance must be dated no earlier than April 1, 1916, when he prosecuted respondent and deceased. Not until April 1, 1921, had five successive years elapsed. Respondent argues that then she could have contracted a valid common-law marriage with deceased. She says that since she had neither seen her husband in the flesh nor

heard from him directly in that period she was free to marry. *Matter of Merrill* (143 Misc. 110) might at first blush seem to be some authority for the proposition that a right to enter into a second marriage automatically accrued at the expiration of five years from the time of so-called disappearance. That case, however, is based upon a fact finding by the surrogate that there had been an actual abandonment of more than fifteen years and that there was in fact the required lack of knowledge. If the case is to be read as going beyond a holding that in the absence of a showing of such lack of knowledge there might still be a valid marriage it could not be followed. The statute under which respondent seeks to validate her claim of marriage to deceased demands an *affirmative* showing of an absence of knowledge that the spouse had been alive during the five-year period. It demands, too, an *affirmative* showing that reasonable search had been made and that despite such search there was no reasonable likelihood of the existence of the spouse. It is only after every reasonable means to determine the facts have been taken that the statutory lack of knowledge can be claimed. The studious looking away from readily available evidence is a device which proves useless to any person seeking protection under the quoted section 7 of the Domestic Relations Law. After pointing out that the statute contains possibilities of undesirable social results, the Court of Appeals, by VANN, J., said: " A statute with such possibilities should be so construed as to promote good order, and the person availing himself of its privilege should be required to act *in perfect good faith* [citing cases]. He decides the question as to his right to remarry himself, without application to any court or public authority. The whole responsibility rests upon him. He cannot shut his eyes and ears and justify a second marriage because for five years he had not heard from his wife. Did he try to hear from her? Did he honestly believe she was dead? Did he make inquiry? " (Italics supplied.) (*Gall* v. *Gall*, 114 N. Y. 109, 120, 121.) And in *Stokes* v. *Stokes* (198 N. Y. 301, 308) this distinguished judge developed the doctrine still further by showing that by perfect good faith there is to be understood not good faith in fact but good faith in law. To the same effect see *Tyler* v. *Tyler* (80 Hun, 406, 408) and *Alixanian* v. *Alixanian* (28 Misc. 638, 639). The record in the present case is destitute of any credible evidence to show that respondent in good faith entered upon a common-law marriage with deceased to which was attached even a tentative validity. Even in a case where the impediment is removed and the parties to an illicit relationship might change it to a licit one, the lack of any affirmative act or declaration indicating a change was held sufficient

to bar an alleged widow who claimed compensation for her alleged husband's death. (*Matter of Hill* v. *Vrooman*, 242 N. Y. 549.) The comment on that case made in *Matter of Haffner* (*supra*) shows the necessity for a *change* of intention after it has once been established that the parties entered into illicit relations knowing that they were *incompetent* to contract marriage. Whatever desire there was for marriage between these parties was in existence at least as early as the 1920 marriage ceremony. It might be argued that the entry into that ceremony evidenced a *mental* intention to marry. It could not evidence a *legal* intention to marry because as of that date the parties well knew that they could not validly marry. Each of them knew that respondent was disabled from entering into a marriage. What the parties might call in fact their intention to marry could have no legal existence. The record is bare of any expression of intention to marry other than that evidenced by the ceremony of 1920. So the record stands that there was never any valid legal intention to marry.

Only three things would have permitted a valid marriage between the parties here. The first would be the death of the husband of respondent. On the proof here the court must hold that he still lives. The second would be a divorce of her husband. In fact she did not divorce him. In view of her own conduct it is not conceivable that she could have succeeded in such an action. The third and only remaining basis to a valid marriage would be an honest search for her husband after a disappearance of at least five years and proof that during such search made in good faith she could learn nothing about him. In fact, she made no such search. In contemplation of law she never was competent to marry deceased. In contemplation of law she never intended to be married to deceased. She is not his widow.

Accordingly, the letters heretofore issued to her in that capacity must be revoked as well as those issued to her nominee.

Submit, on notice, decree accordingly.